EPWORTH ASSEMBLY *v.* LUDINGTON & NORTHERN
RAILWAY.

1. SPECIFIC PERFORMANCE — MANDATORY INJUNCTION TO PERFORM
   MAY NOT BE GRANTED WHERE NO CONTRACTUAL OBLIGATION
   EXISTS.

   Acceptance of a grant of land by a railway company from
   a resort association to be used for railroad purposes only
   and to revert to the association in case it was not so
   used for the period of one year, did not create a con-
   tractual obligation on the part of the railway company
   to furnish transportation to passengers between the city
   and the resort which could be specifically enforced by a
   mandatory injunction.[1]

2. NOVATION—ESSENTIAL ELEMENTS.

   The necessary legal elements to establish a novation are
   (1) parties capable of contracting; (2) a valid prior
   obligation to be displaced; (3) the consent of all the
   parties to the substitution; and (4) the extinction of the
   old obligation and the creation of a valid new one.[2]

3. SAME—NOVATION NOT ESTABLISHED.

   Where a development company was under contractual ob-
   ligation to a resort association to furnish passenger trans-
   portation between the city and the resort, and caused a
   street railway company to be organized to furnish said
   transportation, but there was never any agreement be-
   tween the parties accepting performance by the railway
   company as a fulfillment of the development company's
   obligation, there was no contract of novation substituting
   the obligation of the railway company for the obligation
   of the development company.[3]

4. EJECTMENT — PROPER REMEDY TO RECOVER POSSESSION FOR
   BREACH OF CONDITION SUBSEQUENT.

   Ejectment is the proper remedy to recover possession of
   land for breach of a condition subsequent, but such action
   will not lie against one in possession under an easement.[4]

[1]Injunctions, 32 C. J. § 304; [2]Novation, 29 Cyc. p. 1130; [3]Id.,
29 Cyc. pp. 1136, 1139; [4]Ejectment, 19 C. J. §§ 6, 67.

5. DEEDS—ESTATES—CONDITION SUBSEQUENT—DETERMINABLE FEE.
    Where a deed to a railway company provided ·that the
    ·land conveyed should be used for railroad purposes only,
    and a second deed between the same parties conveying
    .additional land for an extension of the railroad provided
    that if the land should cease to be used for railroad pur-
    poses for one year or longer it should revert to the grantor,
    a determinable fee was created rather than an easement.[5]

6. RAILROADS—NUISANCE—ORDINARY MOVEMENT OF TRAINS NOT A
    NUISANCE.
    Although the moving of defendant's trains conveying sand
    through plaintiff's resort was an annoyance and incon-
    venience to the cottagers thereon, it may not be restrained
    as a nuisance, in the absence of any showing that the
    operation of the trains was in other than the usual way.[6]

Appeal from Mason; Dingeman (Harry J.), J., pre-
siding.    Submitted June 22, 1926.    (Docket No. 52.)
Decided December 8, 1926.

Bill by the Epworth Assembly against the Ludington
& Northern Railway for specific performance, an in-
junction and damages.    From a decree dismissing the
bill, plaintiff appeals.    Affirmed. .

*Elvin Swarthout* (*Clay F. Olmstead, Hopkins, Starr
& Hopkins,* and *Donald J. DeWolfe,* of counsel), for
plaintiff.

*Barthell & Rundall, John C. Shields,* and *A. A.
Keiser,* for defendant.

SHARPE, J.    On May 4, 1894, a contract was en-
tered into between the Citizens' Development Com-
pany, of Ludington, a corporation, the Flint & Pere
Marquette Railroad Company and the Epworth League
Training Assembly, a corporation, whose name was
afterwards changed to the Epworth Assembly, the
plaintiff herein.    After recitals stating the purposes
thereof, the development company agreed therein to

---

[5]Deeds, 18 C. J. § 281; Estates, 21 C. J. § 180; [6]Railroads, 33
Cyc. pp. 644, 645.

convey certain real estate, lying along the shore of
Lake Michigan and about two miles north of Luding-
ton, to the Assembly.    It also agreed to pay to the
Assembly the sum of $1,000 and to attempt to secure
donations in the sum of $10,000 from the citizens of
Ludington to aid the Assembly in the development of
a resort on said land.    It also agreed to furnish trans-
portation during the season of 1894 and thereafter
during the life of the Assembly, and "to establish,
construct and operate a street railway, or procure
the same to be established, constructed and operated,"
from the railroad depot and steamboat dock to the
grounds of the Assembly, and have the same in
operation not later than July 1, 1898.    The railroad
company agreed to pay to the Assembly $10,000 and
to give reduced fares to its cottagers and free trans-
portation to certain of its officers.    The Assembly
agreed to erect permanent buildings on the land and
to hold a meeting thereon during the summer season
for the period of 15 years, and to use its best efforts
to make sale of lots and to establish a summer resort
on said lands.    The contract provided that, in case
the Assembly failed "to provide for such meetings and
to carry on the kind of work herein designated and
set forth," the land should revert to the grantors.

A more comprehensive statement of the object
sought to be attained by said contract and the efforts
of the Assembly to perform on its part, resulting in
the development of a beautiful summer resort on said
land, will be found in the opinion in *Epworth League
Training Assembly* v. *Olney,* 136 Mich. 50.

On May 22, 1894, the development company con-
veyed the land described in the contract to the
Assembly.    A provision therein rendered it subject
to the covenants and agreements contained in the con-
tract.    In March, 1895, the Epworth League Railroad
Company was organized, the name being afterwards

changed to that of defendant.    On July 1, 1895, the
Assembly conveyed to the railroad company by deed
a strip of land 50 feet in width, particularly described
therein, "to be used for railroad purposes only." The
road was built thereon and operated apparently with-
out complaint for many years.    It procured a fran-
chise to operate a street railway on certain streets in
the city of Ludington for the period of 30 years.    The
road did not reach the depot or docks of the Pere
Marquette railroad, as provided for in the contract.

In 1914, the Assembly sought to have the road ex-
tended to land adjoining its resort on the north, which
it had at that time secured.    The defendant's officials
claim that, owing to the uncertainty of the passenger
business on the extension, it was agreed that it might
extend the line to a large sand hill and haul sand
therefrom in freight cars over its line.    The exten-
sion was completed in July, 1915, and passenger trains
as well as freight trains hauled over it that season.
There being but one cottage on the addition, passenger
service was discontinued in 1916.    Freight trains,
hauling the sand, were, however, run over the road.
On November 28, 1916 (after the road had been thus
used for two seasons), the plaintiff executed to defend-
ant a deed of a 50-foot strip of land from the end of
the line as theretofore constructed to the side of the
addition nearest to the sand hill.    This deed con-
tained a provision for reverter hereafter quoted.

After 1914, the passenger business on defendant's
line began to decrease.    In 1918, less than one-third
of the number carried in 1914 were transported.
Quite early in 1919 there were negotiations between
the defendant and the plaintiff, the Hamlin Associa-
tion (interested in another resort) and the city com-
mission, looking towards the substitution of a motor
bus service between the city and the grounds of the
plaintiff and the Hamlin Association for that of the

railroad. It resulted in defendant's applying to the Michigan railroad commission for leave to discontinue its line through the city and to a point where by a siding it connected with the Pere Marquette Railroad Company's line. The commission, on July 2, 1919, declined to grant such permission. The application was later renewed, and on July 18, 1919, the public utilities commission, which had, under an act of the legislature, succeeded to the powers and duties of the railroad commission, made an order granting such permission. This order recites that it appeared to the commission that an agreement had been entered into between the parties interested and one Joseph D. Cooper, wherein Cooper had obligated himself to furnish transportation by motor busses to take the place of that theretofore supplied by the railroad, and that all of the parties interested had consented thereto, whereas in fact the assent of the plaintiff's officials had not been secured. Plaintiff's secretary, however, had written a letter, saying that the matter could not be considered until a later meeting of its executive committee, but that he favored it and believed the committee would also do so. The city commission had instructed its clerk to execute this agreement and by resolution provided that upon its execution the franchise of the defendant should become null and void. The railroad roadbed, for which permission to discontinue its use had been granted by the utilities commission, was soon after torn up. Defendant continues to do a freight business in switching cars received by it from the Pere Marquette Railroad Company to and from certain factories along its line and also in hauling sand from the sand hill north of the river.

On July 29, 1921, plaintiff filed its bill of complaint herein. In its prayer for relief it asked:

(1) That the court issue its mandatory injunction

directing defendant to relay its tracks and to resume the passenger service.

(2) That defendant be enjoined from transporting or conveying sand over its line where it passes through plaintiff's premises.

(3) That the court decree that by reason of the provisions in the deeds of July 1, 1895, and November 28, 1916, the title to the strips conveyed have reverted to plaintiff.

(4) That plaintiff be decreed its damages sustained by reason of the discontinuance of passenger service on said road.

After the proofs were submitted, the trial court concluded: (1) That the defendant was under no contractual obligation with plaintiff to furnish such transportation; (2) that plaintiff's remedy, if defendant's deeds have become void for the reason stated, was by an action of ejectment; (3) that plaintiff had not made out a case entitling it to equitable relief. He expressed a willingness to transfer the cause to the law side of the court, but plaintiff declined to do this and brings the case before us by appeal from the decree entered.

1. Specific Performance. Plaintiff's prayer for a mandatory injunction is, in effect, an appeal to the court to require the defendant to specifically perform the obligations entered into by the development company in the tripartite agreement of May 4th. The only contract relations existing between the plaintiff and defendant are evidenced by the deeds of July 1, 1895, and November 28, 1916, heretofore referred to. In the first of these deeds it was said that this land was "to be used for railroad purposes only," and in the second that if the land conveyed shall at any time "cease to be used for railroad purposes" for one year it shall revert to the grantor. These provisions in no way bind the defendant to maintain and operate a train or cars affording passenger service from Ludington to plaintiff's grounds. In fact, such an

undertaking is negatived by the provision for reverter contained in the latter deed. The *habendum* clause in the deed first executed reads:

"To have and to hold the above granted premises to the said party of the second part, its successors and assigns forever for the uses above expressed, subject to the reversionary clause covered by deed from the Citizens Development Company to said first party and the* contract between the Citizens Development Company to said first party and the contract between the Citizens Development Company, the F. & P. M. R. R. Company and the Epworth League Training Assembly now of record in the office of register of deeds of Mason county."

This provision was evidently inserted to protect the grantor on its warranty in view of the provision for reverter to the development company contained in the contract to which the deed from that company was made subject.

It is plaintiff's claim, however, that the defendant was organized pursuant to the undertaking of the development company to furnish transportation and that when it procured the franchise from the city and accepted the deeds from the plaintiff and equipped and operated its road such acts on its part were treated by all of the parties to the contract as a fulfillment of the development company's obligation to plaintiff and created a contract of novation whereby it became substituted for and assumed the obligations of the development company to the plaintiff.

In *Gillett* v. *Ivory*, 173 Mich. 444, 450, it was said:

"The necessary legal elements to establish a novation are (1) parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all the parties to the substitution; and (4), lastly, the extinction of the old obligation and the creation of a valid new one."

See, also, *Harrington-Wiard Co.* v. *Manufacturing Co.*, 166 Mich. 276.

The record is barren of any proof of agreement or understanding between the parties evidencing a consent to such substitution.    It is apparent that the development company was instrumental in securing the construction and operation of defendant's road. While it is true that the assent to and acceptance of the terms of novation may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter, yet the performance by the substitute is not sufficient in itself to raise such implication.

"There must be consent by the creditor to take the new debtor as his sole security and to extinguish the claim against the former debtor.    *Butterfield* v. *Hartshorn*, 7 N. H. 345 (26 Am. Dec. 741).    Such consent is not to be implied merely from the performance of the contract by the substitute, for that might well consist with the continued liability of the original party, the substitute acting for that purpose in the capacity of agent for the original obligor."    *Illinois Car, etc., Co.* v. *Linstroth Wagon Co.*, 112 Fed. 737, 740 (50 C. C. A. 504).

It does not appear that there ever was a meeting of the officials of the three companies in which the matter was discussed.    The development company had agreed to furnish transportation to plaintiff's grounds. It further agreed to provide or secure street car facilities thereto by a specified date.    The operation of the defendant company was accepted by plaintiff as a compliance with that undertaking.    But, without agreement on the part of the plaintiff, the development company was not relieved of its obligation to furnish such transportation.    Nor without its assent was the defendant obligated to continue the operation of its road for that period of time.    In the absence of proof indicating a willingness to be bound by the development company's obligation to plaintiff, it will not be implied.    In our opinion specific performance cannot be decreed.

2. Defendant's Title.    It is plaintiff's claim that defendant has but an easement in the property conveyed to it by plaintiff, while defendant claims that it has title in the nature of a determinable fee.    The trial court agreed with defendant, and held that plaintiff's remedy to recover possession was by ejectment. Ejectment is the proper remedy to recover possession of land for breach of a condition subsequent.    *Barrie* v. *Smith,* 47 Mich. 130; *Smith* v. *Barrie,* 56 Mich. 314 (56 Am. Rep. 391) ; *Chippewa Lumber Co.* v. *Tremper,* 75 Mich. 36 (4 L. R. A. 373, 13 Am. St. Rep. 420). Such an action, however, will not lie against one in possession under an easement.    *McMorran Milling Co.* v. *Railway Co.,* 210 Mich. 381.    The nature of the title acquired by defendant must therefore be determined.    In its deed executed in 1895, plaintiff's predecessor conveyed to defendant's predecessor "a parcel of land fifty feet in width," particularly describing it, "to be used for railroad purposes only," together with all and singular the hereditaments, etc. In its deed executed in 1916 the plaintiff conveyed to the defendant "a strip of land 50 feet wide," particularly describing it, subject to the following proviso:

"Provided, however, if, for any reason, the property, premises or land above described shall, for one year or longer, cease to be used for railroad purposes and trains shall not be run over the railroad track built or to be built on the land described, then and in that case all of the land herein described, together with all and singular the hereditaments and appurtenances belonging or in anywise appertaining thereto shall revert to the Epworth Assembly, of Ludington, Michigan, its heirs and assigns, and this quitclaim deed become null and void and of no effect and all rights, title and interest in and to the lands above described remain the same as would have been the case if this quitclaim deed had never been executed."

On the face of these deeds it would appear that a determinable fee had been created.    In neither deed

is the land conveyed for a right of way, although an inference would doubtless be drawn that it was, from the description used. The first deed provides that the land shall "be used for railroad purposes only," and the second that if the land shall "cease to be used for railroad purposes" for "one year or longer" it shall revert to the grantor. Had not these provisions been inserted, it seems clear that an unqualified title in fee would have passed to the grantees. The restriction upon its use is a condition upon which the grant is accepted, a failure to comply with which voids the instrument and causes the title to revert to the grantor. A more perfect conveyance of a fee subject to be terminated by a condition subsequent than that executed in 1916 could not well be prepared. And this conveyance, being granted for an extension of the line for which the grant was made in 1895, is indicative of the intent to convey a similar title at that time.

The bill of complaint was, we think, prepared on the assumption that a determinable fee had been conveyed. The word "easement" does not appear therein. It is alleged that the defendant has not complied with the provision therein that the land conveyed should "be used for railroad purposes only," and that the land last conveyed has not been used "for more than a year for such purposes." In the prayer for relief the court is asked to decree that the use made of said strip of land has not been for railroad purposes, "and that therefore said proviso in said deed has become operative," and that said deed is "null and void and of no effect," and that the deed executed in 1895 "be decreed null and void, and that the title and interest covered thereby be revested in plaintiff."

In our opinion the title conveyed was a determinable fee, not an easement. Plaintiff's counsel rely on *Mahar* v. *Railway Co.*, 174 Mich. 138. An examina-

tion of the instrument there considered will disclose that the consideration for the conveyance was set out at length; that the grantors reserved the right of sewage and drainage under the tracks to be constructed, and that it contained other provisions seemingly inconsistent with a conveyance of the fee.

The test of determination is the intention of the parties, gathered from the language of the instrument when read in those lights which are properly employed in the construction of writings. In *Jones* v. *Van Bochove,* 103 Mich. 98, 100, it was said:

"Where the land is first conveyed, and then a provision afterwards inserted, showing what the land is to be used for, it is held in many cases that the fee is conveyed, and the clause providing for what the land is to be used is a condition subsequent."

In *Hickox* v. *Railway Co.,* 78 Mich. 615, a provision quite similar to that which appears in the 1916 deed was treated as a condition subsequent and recovery permitted in ejectment after the defeasance had become operative. See, also, *Blanchard* v. *Railroad Co.,* 31 Mich. 43 (18 Am. Rep. 142) ; *Reynolds* v. *Gaertner,* 117 Mich. 532; *Estes* v. *Driving Ass'n,* 181 Mich. 71. Where one party claims a legal right to premises and another is in possession claiming adversely to him, an action of ejectment, and not a suit in equity, is the appropriate remedy to recover possession. *Carpenter* v. *Dennison,* 208 Mich. 441; *Kavanaugh* v. *Rabior,* 215 Mich. 231.

3. Nuisance. There is proof in the record that the moving of defendant's trains from the sand hill to the switch is an annoyance and inconvenience to the cottagers in plaintiff's resort, and the bill prays for an injunction to restrain their operation. In 33 Cyc. p. 644, it is said:

"The operation of a railroad constructed by lawful authority cannot, by reason of the noise, smoke, vibrations, or other objectionable features necessarily in-

cident thereto, be deemed a nuisance in the absence of any negligence or abuse in the manner of its operation, although it may be located along a public street, or pass through a populous village or city;  .*  *  * But a railroad company may be guilty of maintaining a nuisance by reason of the negligent or improper manner of operating or using its cars and locomotives."

The record does not disclose that defendant moves its trains in other than the usual way.   All railroads are considered a nuisance by those who live in homes close to the tracks.   In *Grand Rapids, etc., R. Co.* v. *Heisel*, 38 Mich. 62, 70 (31 Am. Rep. 306), this court said:

"An adjoining proprietor can never be entitled to recover from a railroad company for the depreciation in the rental or sale value of his premises, because of the location of the track in the street, except upon the assumption that the location is of itself unlawful."

*Rhoades* v. *McNamara*, 135 Mich. 644, is clearly distinguishable.

The decree will be affirmed, with costs to appellee.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.