FARMER *v.* FRUEHAUF TRAILER COMPANY.

1. APPEAL AND ERROR—QUIETING TITLE—DE NOVO HEARING BY SU-
PREME COURT.

    A suit to quiet title, being a chancery case, is heard *de novo* by
the Supreme Court.

2. SAME—SUPREME COURT—REVERSAL OF CHANCERY CASE.

    The Supreme Court does reverse the decision of a trial court
in a chancery case, where the case is such that had the Supreme
Court occupied the position of the trial court, it would have
reached the opposite or a different result.

3. FRAUDULENT CONVEYANCES—JUDGMENT CREDITORS—AGREEMENT TO
SUPPORT MOTHER—HOME.

    Reconveyance by insolvent son of home which his mother had
conveyed some 13 years theretofore, in return for his agree-
ment for care and support or payment of $15 monthly as
long as she lived, in which he and his children and his mother
were living·at the time of the reconveyance and her death
nearly 4 months later *held,* to have been void and in fraud
of son's judgment creditors who sold the premises on execution
sale within 3 weeks after the reconveyance, where it appears
the son had fulfilled his obligation to his mother during most
of the time intervening between her conveyance to him and
the reconveyance to her and to the best of his ability during
the remaining time, there being substantial compliance on
his part with their agreement, it appearing also that shortly
after the reconveyance the mother left him the property
by will wherein it was recited that he had assumed responsi-
bility for her support and also that at no time could the mother
have successfully prosecuted a suit against the son to cancel
the original conveyance because of his breach of contract or
failure of consideration.

SMITH and BLACK, JJ., dissenting.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 3 Am Jur, Appeal and Error §§ 814, 815.
[3] 24 Am Jur, Fraudulent Conveyances §§ 20, 24, 28, 29, 54.

Appeal from Muskegon; Beers (Henry L.), J. Submitted February 8, 1956. (Docket No. 89, Calendar No. 46,618.) Decided May 14, 1956. Rehearing denied June 28, 1956.

Bill by Edward C. Farmer, Jr., administrator of the estate of Bertha Ristau, deceased, against Fruehauf Trailer Company, a Michigan corporation, and Trailmobile, Inc., a Delaware corporation, to set aside sheriff's sales of real estate on executions. Decree for plaintiff. Defendants appeal. Reversed and decree dismissing bill ordered entered.

*Hathaway, Latimer, Clink & Robb* (*H. Winston Hathaway,* of counsel), for plaintiff.

*Warner, Norcross & Judd* (*Joseph B. White,* of counsel on application for rehearing), for defendant Fruehauf Trailer Company.

*Stribley & Rude,* for defendant Trailmobile, Inc.

DETHMERS, C. J. In 1940 plaintiff's decedent conveyed her home at Muskegon to her son, Frank Ristau, reserving a life estate. In consideration thereof he agreed in writing to provide a home for her for the rest of her life and to maintain and support her for so long as it was agreeable to both to live together, but, if that became unsatisfactory to either, then, in lieu thereof, he would pay her $15 per month as long as she lived; he was also to supply her with necessary medicines and medical care and to keep the house in repair and agreed that, in the event of default on his part, the premises should revert to her. Until 1951 he fully performed the terms of his agreement with her. Then he became somewhat in arrears, but caught up again. In February of 1952 he was divorced and his mother then lived with him and his children in his home in the city of Holland until June of 1953, but spent the week ends in her

home at Muskegon to which she and the grandsons returned permanently after the latter date. In September of 1953 the son also moved to the Muskegon home and he and his sons lived there with the mother until her death on January 25, 1954. In November of 1952 he became involved with individual creditors and the internal revenue department, in consequence of which his business property was seized and he was forced out of his trucking business. His debts at that time amounted to approximately $50,000. In December of 1952 he began work as a truck driver. During all this time and until the mother's death he continued to give her such support as his means permitted. He testified that in 1953, and earlier, there were times when he had not been able to buy her medicine or clothes, but he had bought the food for the family, and his oldest son, who lived with them, paid her $15 per week as board and room, his sister bought some of the medicines and clothes for her, that he neglected repairs to the house, and that during the last couple of years of his mother's lifetime he failed to pay her $15 per month under the written agreement. He further testified that she expressed dissatisfaction with his performance of the agreement and that, as a result, he deeded the Muskegon home back to her on October 1, 1953.

On November 7, 1952, defendant Fruehauf Trailer Company obtained a $2,750 judgment against him and in February, 1953, caused an execution to issue against his property and filed the same with the Muskegon county register of deeds. During the ensuing summer the mother knew that Fruehauf was attempting to satisfy its judgment by a levy on the home and on August 25th caused her attorneys to write Fruehauf to advise of her interests in it. On August 31st the sheriff gave notice of sale pursuant to a levy of execution and on October 19th sold the

premises on execution sale to Fruehauf for the amount of its judgment, plus interest and costs.

When the mother died on January 25, 1954, she left a will, executed on October 15, 1953, by which the premises were devised to her son, Frank Ristau, the will stating that this was done "for the reason that since 1940 he has assumed the responsibility of supporting me." On the son's petition the will was admitted to probate shortly after her death and a few days later he filed his voluntary petition in bankruptcy. Two months thereafter plaintiff, as administrator of the estate of the mother, brought this suit to have the levy and sheriff's sale set aside as a cloud on plaintiff's title and to quiet title to the premises in plaintiff. Defendants defended on the ground, *inter alia,* that the conveyance on October 1, 1953, by Frank Ristau to his mother was without consideration and void because in fraud of creditors and particularly of defendants. Plaintiff, in turn, contended that Frank was in default on his agreement to support his mother and that, for that reason, she was entitled to a reconveyance under its terms. The trial court agreed with plaintiff's contention, held the conveyance valid and entered a decree granting plaintiff the relief prayed. Defendants appeal.

Was the conveyance from Frank Ristau to his mother in fraud of creditors and therefore void? A question of fact is presented. This being a chancery action we hear it *de novo.* We are persuaded that had we sat in the position of the trial judge we would have decided otherwise on the facts and that the decree is not in accord with the just rights of the parties and should be reversed. From an examination of the entire record, disclosing facts as outlined in brief above, we are satisfied that the son fully performed his obligations under the agreement with his mother from 1940 until 1951, that thereafter his straitened financial circumstances limited his ability

to do everything for her that he theretofore had done, but that he continued performance to the best of his ability, and that there was substantial compliance and performance on his part with some voluntary assistance by his oldest son and sister; that the facts with respect to his performance at that time and until the mother's death and the equities between them were such that at no time could she have prevailed in an action to cancel her conveyance to him for breach of contract or failure of consideration, in view of his full performance for a dozen years and substantial performance to the extent of his ability thereafter, and in view of the further fact that his failure during the last period of his mother's life to pay her $15 per month was not a default, as he professed to believe, because he was not required, under the agreement, to do so while they lived together, as they had done almost continuously during the period encompassing the alleged default. During that period creditors were harrassing him. Fruehauf had obtained judgment, made a levy and noticed a sheriff's sale thereon for October 19, 1953. Under all these circumstances it is apparent that his deed to his mother, executed on October 1st, allegedly given her because of his failure to support her as agreed but followed within a few days by her execution of a will leaving everything to him because, as therein recited, he had supported her, amounted to nothing more or less than an attempt to salvage the home by putting it beyond the reach of creditors at a time when he was insolvent and shortly to go into voluntary bankruptcy. It follows that the conveyance by the son was in fraud of creditors and void and that, accordingly, the premises belonged not to the mother but to the son at the time of levy and sheriff's sale and were, therefore, subject thereto. This view of the case renders decision of other questions raised unnecessary.

Decree reversed and set aside. A decree may enter here dismissing plaintiff's bill of complaint with prejudice and with costs to defendants.

SHARPE, BOYLES, KELLY, and CARR, JJ., concurred with DETHMERS, C. J.

BLACK, J. (*dissenting*). The defendant judgment creditors have no interest in the subject matter of this contract between mother and son excepting such as are lawfully derivable through equities, if any, of the son. They stand in his shoes and should succeed or fail on strength or weakness of whatever right he possessed during the mother's lifetime to resist equity-enforced reconveyance. The issue should be weighed and considered by this Court of conscience without regard to presence of such creditors and with exclusive view toward such decree as equity would have awarded, to the mother prior to her death, had the son refused to reconvey when he did.

The contract between mother and son was in writing. The executory obligation thereof plainly guaranteed to the mother for the balance of her lifetime, not only a home to be provided by the son but also maintenance and support by the son "in the manner in which she had immediately prior hereto been accustomed." My Brother's opinion concedes that from some time in 1951 and until the mother's death the son's performance of the contract was limited to "the best of his ability" and to "such support as his means permitted."

The chancellor concluded after hearing the testimony of the parties that the son had committed an actionable breach of this contract of life support and that the mother would have been entitled to rescission on account thereof had the son not then and there reconveyed. With this I agree. The record

contains no hint or inference on which it may be said that the son "substantially" performed the contract. He agreed to support his mother, in manner to which she had previously been accustomed, and did not do so. And his continued breach did not stop there, as we shall see.

If we are to accept as "substantial" performance this "all I could do" proof, when the contract plainly requires something better, then I think we just as plainly should so advise the profession for future reference. This is not the first and it assuredly will not be the last case of deed of farm or home in return for life support that will come before us.

When the mother insisted upon and received from her son the reconveyance in question, she obtained only what she then and there was lawfully entitled to by interposition of equity. The defendants Fruehauf and Trailmobile, Inc., consequently suffered no justiciable loss on account of such reconveyance. As was said in *Welsh* v. *Richards*, 41 Mich 593 (another opinion signed by our revered leaders, Justices Cooley, Campbell, Marston and Graves):

"The vendee may, without compelling his vendor to resort to legal measures, surrender up his contract for cancellation and yield possession of the premises. In other words, the parties may by agreement accomplish that which the law would if resorted to. * * * Where under the surrender the vendor acquires no right or advantage as against such third party, which he could not have acquired by judicial proceedings, such third party is not injured."

This is especially so in present case, the defendants not having asked by pleading or otherwise for determination of the son's earned equity, if any, in the subject matter.

No litigant, much less a beset old lady whose contracted right of life support is about to be jerked

from under her feet by creditors of another, may rightfully be accused of fraud for having taken the very steps a competent lawyer would (and did in this case) advise her to pursue toward protection of that right. This mother had valuable equities in her homestead, stemming from the son's past, as well as anticipatory, breach of his contract to support and maintain her and the home according to its terms. Let us turn to the record.

Mrs. Ristau, aged 73 years when she passed away January 25, 1954, suffered for years from diabetes. The disease required daily doses of insulin. The contract required of the son:

"It is further understood and agreed that said son, during the lifetime of said parent, shall furnish a physician or nurse and such medicines as may be necessary in case of sickness, and after her death shall provide her with a decent burial."

Commencing in 1951 the son failed utterly with respect to providing insulin for his mother with result that she was compelled to obtain what she needed through a daughter. Furthermore, and with reference to the same quoted paragraph of the contract, it is noted that the majority opinion deigns no thought or provision for payment of the mother's funeral and burial expenses out of that which is awarded via the son to his creditors.

This is not all. When the financial and marital going really got tough for the son in 1951, the mother pitched in with washing, ironing and housework and that care for the son's 6-year-old boy only a mother or grandmother can give. Instead of being supported after the son's financial reverses she was in fact helping to support him and his remaining family, and she meanwhile suffered his continued breach of this additional covenant:

"It is also mutually agreed that the son shall pay all taxes and special assessments assessed against the foregoing real estate, shall keep said property fully insured against damage by fire and windstorm, in policies indicating the interest of each of the parties hereto in said premises, and the son shall maintain and keep said premises in a good state of repair during the term of the natural life of the parent."

It is on this record of fact that today's majority brands the rightful and keenly understandable efforts of Mrs. Ristau, toward protection of her contracted security of life support and maintenance, as fraudulent. And this we do on clamored demand of creditors of her son—creditors to whom she owed nothing. I am ashamed of our decision, and suggest in that spirit that this Court of equity is caught today by the record before us with its ample maxims down. In any case of like nature, no creditors lurking in the background of course, this Court would at least decree a lien to the mother and in turn her representative for the determined value of her rightful equities in the subject matter. Not so here, however. The winner-creditors take all.

The chancellor said, by way of conclusion of his opinion:

"In order for me to hold with the defendants in this case, it must appear that Mrs. Ristau obtained back this deed for the sole purpose of defrauding her son's creditors. There is too much evidence in this case of the inability of the son to carry out the provisions of the contract with his mother for me to hold that that was her purpose in obtaining this deed. If this deed was not a nullity, then it passed title to Bertha Ristau and she might convey it by will, and the defendants in this case can not complain merely because she conveyed it (by will) to her son Frank Ristau after her death."

I vote to affirm with remand as follows:

Under the rule that equity having taken hold will retain for working out and composition of all presented equities and controversies, I would return this case to the chancellor for determination of the proportionate rights of mother and son (if any) in the subject matter of the 1940 contract and for authorization in favor of defendants to feed their judgments solely from that which if anything is equitably awarded to the son on such remand.

I would also award costs of this appeal to plaintiff.

SMITH, J., concurred with BLACK, J.

The late Justice REID took no part in the decision of this case.