*392 KELLY, J.
(dissenting). I agree with the majority’s conclusion that plaintiffs property interest is an easement rather than a fee simple. However, I conclude that this Court should not find that the easement was abandoned.
Defendant has not shown that plaintiffs predecessor, the Soo Line Railroad Company, completed the federal regulatory process for abandonment. Therefore, it appears that the rail line remains under the jurisdiction of the Surface Transportation Board[1] for future reinstatement of service. If that is the case, defendant may not circumvent federal jurisdiction by obtaining a state court judgment of abandonment.
Even if abandonment of the line were consummated with the ICC, we should conclude that the Soo Line never abandoned the underlying easement before conveying it to plaintiff for a trail. The mere fact of the sale demonstrates that the Soo Line intended to retain dominion over the easement until disposing of it. If the company believed in 1982 that it was abandoning this property interest, it would not have sold a portion of it to plaintiff in 1985.
Moreover, the parties who originally created the easement did not intend to limit its use to a rail line. Rather, they created a right-of-way to last forever, one that can be used today as a recreational trail.
Therefore, the result reached by the trial court and the Court of Appeals should be affirmed.
*393 FACTUAL BACKGROUND
In 1873, the Quincy Mining Company granted an easement for a right-of-way to the Mineral Range Railroad Company. Defendant now owns a portion of the mining company’s former property through which this right-of-way runs.
The Mineral Range Railroad built and for many years operated a rail line on the right-of-way. It then transferred the rail line and right-of-way to the Soo Line Railroad. In the 1980s, the Soo Line discontinued running trains on the rail line. Sometime after 1986, it removed some of the tracks and, in 1988, sold the right-of-way to plaintiff Michigan Department of Natural Resources. Plaintiff maintained the former railway grade as a recreational trail. But, nine years later, defendant installed a fence across the trail, blocking its use as a trail.
PROCEEDINGS BELOW
Plaintiff filed suit seeking an injunction to force removal of the fence. The trial court initially held that Mineral Range had an unrestricted fee simple interest that it passed to plaintiff by deed. The Court of Appeals reversed that holding and remanded the case. Unpublished opinion per curiam, issued June 5, 2001 (Docket No. 222645). It held that the deed conveyed an easement, not a fee simple interest, and remanded the case to the circuit court for a determination whether the easement remained in existence.
On remand, the circuit court granted plaintiffs motion for summary disposition. It held that the easement was not limited to use as a rail line. Moreover, it found that the Soo Line had not abandoned the easement. Thus, plaintiff was entitled to maintain the right-of- *394 way as a recreational trail. The Court of Appeals affirmed that decision. Unpublished opinion per curiam, issued June 3, 2003 (Docket No. 240908). We granted defendant’s application for leave to appeal. 470 Mich 868 (2004).
STANDARD OF REVIEW
The existence of an easement is a question of law. Mahar v Grand Rapids T R Co, 174 Mich 138, 142; 140 NW 535 (1913); Epworth Assembly v Ludington & Northern Railway, 236 Mich 565; 211 NW 99 (1926). In contrast, the permissible use of an easement is a question of fact. Hanselman v Grand Trunk W R Co, 163 Mich 496, 499; 128 NW 732 (1910); 65 Am Jur 2d, Railroads, § 60, pp 247-248.
Trial courts may draw inferences of fact. MCR 7.316(A)(6). They are presumed correct[2] and may not be set aside unless found to be clearly erroneous. MCR 2.613(C). We review actions to establish title de novo. Farmer v Fruehauf Trailer Co, 345 Mich 592, 595; 76 NW2d 859 (1956).
A STATE COURT MAY NOT DECLARE A RAILROAD EASEMENT ABANDONED BEFORE ABANDONMENT OF THE RAIL LINE HAS BEEN CONSUMMATED WITH THE ICC
Under federal transportation law involving rail lines, abandonment has a specific meaning. Bingham Twp v RLTD R Corp, 463 Mich 634, 635-636; 624 NW2d 725 (2001), citing RLTD R Corp v Surface Transportation Bd, 166 F3d 808, 810-811 (CA 6, 1999). It refers to removal of a rail line from the national transportation system. Nat’l Ass’n of Reversionary Prop Owners v Surface Transportation Bd, 332 US App DC 325, 327; *395 158 F3d 135 (1998) (NARPO), citing Preseault v Interstate Commerce Comm, 494 US 1, 5-6 n 3; 110 S Ct 914; 108 L Ed 2d 1 (1990) (unanimous).
Under the federal Transportation Act,[3] a rail carrier may not remove a rail line from national service until it obtains a certificate of abandonment from the ICC. 49 USC 10903(a)(1)(B). Hayfield N R Co v Chicago & N W Transportation Co, 467 US 622, 628; 104 S Ct 2610; 81 L Ed 2d 527 (1984) (unanimous). The certificate verifies that future public convenience and necessity will accommodate cessation of the company’s rail service on the line. Id. It reflects the ICC’s determination that the line is no longer needed for interstate rail service. Railroad Ventures, Inc v Surface Transportation Bd, 299 F3d 523, 531 n 4 (CA 6, 2002), citing Preseault at 6 n 3.
Years ago, the ICC developed a mechanism to retain jurisdiction over a rail line if a carrier did not realize its stated intent to abandon the line. It imposed conditions on its issuance of a certificate of abandonment,[4] maintaining jurisdiction over the rail line until the conditions were met. Preseault at 8. A line no longer in use, but not officially abandoned, could be reactivated later. In the meantime, it was termed “discontinued.” NARPO at 328.
In this case, the Soo Line sought, and in 1982 was issued, a certificate of abandonment. It expressly stated:
1. This certificate and decision is effective October 1, 1982....
*396 2. If the authority granted by this certificate and decision is exercised, Soo Line shall advise this Commission in writing, immediately after abandonment of the line of railroad, of the date on which the abandonment actually took place.
3. If the authority granted in this certificate and decision is not exercised within one year from its effective date, it shall be of no further force and effect. [ICC Certificate and Decision, Soo Line Railroad Company, Docket No. AB-57 (Sub-No. 7) (Decided September 29, 1982).]
The majority erroneously states that the “Soo Line followed the procedures necessary to abandon” the rail line. Ante at 384. The record in this case contains nothing showing that the Soo Line ever advised the ICC that it had completed abandonment as the certificate explicitly required. It appears that no notice of consummation was filed with the ICC or the STB.[5] Consequently, in 1983, a year after the certificate was issued, the abandonment authorization would have expired. The rail line cannot be abandoned without a new proceeding. 49 CFR 1152.29(e)(2);[6] NARPO at 329 n 7.[7]
*397 Moreover, defendant may not divest the ICC of its jurisdiction over the rail line through a collateral state court proceeding. Phillips Co v Southern Pacific R Corp, 902 F Supp 1310, 1317 (D Colo, 1995). ICC jurisdiction over a rail line precludes a state court from making a finding that a state property law interest has been extinguished by evidence of abandonment. Preseault at 8.
Therefore, it appears that this Court lacks jurisdiction to find that the Soo Line abandoned its easement.
EVEN IF THE SOO LINE ABANDONED THE RAIL LINE, IT DID NOT ABANDON THE EASEMENT
However, the majority is unpersuaded and finds that the Soo Line did abandon the easement. I believe that, even if the Soo Line consummated abandonment of the rail line with the ICC, it did not abandon the easement on which the line was built.
Abandonment, like the scope of an easement, is a question of fact. McMorran Milling Co v Pere Marquette R Co, 210 Mich 381, 391, 393-394; 178 NW 274 (1920). Whether it has occurred is determined by the actions of the parties. Van Slooten v Larsen, 410 Mich 21, 50; 299 NW2d 704 (1980), app dis sub nom Craig v Bickel, 455 US 901 (1982).
Congress has made clear that use of a rail line as a recreational trail after the issuance of a certificate of abandonment should not be equated with abandonment of the easement. The ICC’s regulatory authority over rail corridors includes conserving them for future use for commerce and for current use as recreational trails. *398 The Railroad Revitalization and Regulatory Reform Act of 1976 (4-R Act)[8]
provided for mandatory transfers of corridors proposed for abandonment to other carriers, and directed the ICC to impose conditions barring the disposition of railroad rights-of-way for 180 days in order to allow for possible transfers for public use, including for trails. [¶] R Subcomm on Com and Admin L of the Jud Comm, Litigation and Its Effect on the Rail-to-Trails Program, 107th Cong at 57 (June 20, 2002) (statement of Andrea Ferster, General Counsel, Rails-to-Trails Conservancy).]
See Preseault at 5-6.
The Rails-to-Trails Act[9] gave the ICC oversight authority in the conversion of railroad rights-of-way to recreational trails when a rail carrier seeks permission from the ICC to cease service. Id. at 59-60. This authority extends to rights-of-way that are not in use for railroad transportation. Preseault at 6; Caldwell v United States, 391 F3d 1226, 1229-1230 (CA Fed Cir, 2004).
The United States Supreme Court has stated that, when a railroad company “abandons” a line, it does nothing more than divest the ICC of authority over the line. The Court said that Congress intended, when writing the act,
that interim use of a railroad right-of-way for trail use, when the route itself remains intact for future railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad purposes. This finding alone should eliminate many of the problems with this program. The concept of attempting to establish trails only after the *399 formal abandonment of a railroad right-of-way is self-defeating; once a right-of-way is abandoned for railroad purposes there may be nothing left for trail use. This amendment would ensure that potential interim trail use will be considered prior to abandonment. [Preseault at 8, citing H R Rep No. 98-28, pp 8-9 (1983); S Rep No. 98-1, p 9 (1983).]
The Court opined that every rail line is “a potentially valuable national asset that merits preservation even if no future rail use for it is currently foreseeable.” Preseault at 19. Thus, rail-to-trail conversions do not constitute abandonment of a property right under state law, even if the easement was specifically created for railroad purposes only. Preseault at 8.[10]
The majority states that the Rails-to-Trails Act requires a railroad company to “bank” its right-of-way in order to preserve its property interest. This is untrue. Buffalo Twp v Jones, 571 Pa 637, 651; 813 A2d 659 (2002) , cert den Jones v Buffalo Twp, 540 US 821 (2003) . Authorization by the ICC to put a railway right-of-way into interim use as a trail is not required as a matter of law. Citizens Against Rails-to-Trails v Surface Transportation Bd, 347 US App DC 382, 391; 267 F3d 1144 (2001); Southern Pacific Transportation *400 Co — Exemption—Abandonment of Service in San Mateo Co, Ca, 1991 WL 108272 (ICC, 1991).
THERE IS ABUNDANT EVIDENCE THAT THE SOO LINE DID NOT ABANDON THE EASEMENT
The trial court found that the Soo Line had no intent to give up its easement. Because there was ample evidence supporting this ruling, it was not clearly erroneous.
The Soo Line did not immediately remove its tracks. They remained in place on this parcel at least through 1986 when it was appraised. Some of the tracks remain today, as do other structures elsewhere on the right-of-way, such as bridges.
The facts of the Belka v Penn Central Corp[11] decision cited by the majority, and Becker, contrast with the facts in this case. In Belka, the transportation corridor was no longer intact. The land had been broken into segments that could not be restored for future rail service. Belka at 18-19.
In contrast, the right of way in this case remained a viable transportation corridor in use by recreational vehicles until defendant erected its fence. Although its path may have been difficult for some to identify during the litigation, ante at 366, it is without question that plaintiff identified and maintained it as a corridor for recreational vehicles.
In Becker, the rail carrier refused to negotiate to sell the rail line. It preferred to walk away from its property interest. The Soo Line’s conduct, on the other hand, demonstrates an intent not to abandon its property interest in the right-of-way. Three years after filing its *401 notice of abandonment with the ICC, the Soo Line sold a utility easement over the land to the Michigan Bell Telephone Company.
In other cases, perhaps in this one, a rail line would file a notice of abandonment with the ICC as a first step in obtaining financial assistance. The intent might be to secure a means of maintaining operation rather than abandoning it. Chevy Chase Land Co v United States, 355 Md 110, 172-173; 733 A2d 1055 (1999).
Intent to abandon is ascertained by examining the totality of the circumstances.[12] The Soo Line stopped using the right-of-way for a period in this case. However, that may not have signified an intent to abandon it. McMorran at 394. Ceasing operation, removing track, and canceling tariffs are consistent with an intent to retain the right to resume service. Becker at 62, quoting Birt v Surface Transportation Bd, 319 US App DC 357, 362-363; 90 F3d 580 (1996). See also Strong v Detroit & M R Co, 167 Mich App 562, 569; 423 NW2d 266 (1988). More is needed in order to conclusively prove an intent to abandon a property right. That evidence is lacking here. Because there was ample evidence supporting the trial court’s factual findings, they should be upheld.
THE EASEMENT WAS NOT PERPETUALLY RESTRICTED TO USE AS A RAIL LINE
Even if the Soo Line retained its property interest in the easement until conveying it to plaintiff, the ease *402 ment cannot be used for a trail unless its scope includes trails. The majority finds that the easement was for railroad purposes only. It is incorrect.
Where an easement is granted and the scope of its use is in question, we attempt to discern the parties’ intent. Intent is determined by applying principles similar to those used when contracts are construed. 1 Restatement Property, 3d, § 4.1, comment d, p 499. First, the terms of the conveyance itself are examined. Epworth at 575; Quinn v Pere Marquette R Co, 256 Mich 143, 150; 239 NW 376 (1931).
In this case, the conveyance was by deed. Under its terms, Quincy gave Mineral Range and “its successors and assigns forever a right of way for the railroad of” Mineral Range. It later stated that Mineral Range would have and hold the strip of land “for the purpose and uses above stated . .. .”
This Court has held that such a statement of purpose in a conveyance for a railroad does not mean that the land can be used only for a railroad. In Quinn, a warranty deed conveyed a parcel “ ‘to be used for railroad purposes only.’ ” Id. at 146. Like the deed in this case, the deed in Quinn did not contain a reverter clause. After considering the circumstances surrounding the convéyance, the Court concluded that the statement in the deed was merely a declaration of the purpose of the grant. It did not prevent the right-of-way from being used later for other purposes. Id. at 151. Accord 65 Am Jur 2d, Railroads, § 61, p 248, and § 68, p 252.
By contrast, a right-of-way can be limited to use only for a railroad where it is explicitly stated in the conveyance. In Epworth, supra at 568, the deed to the railroad recited that the parcel was “ ‘to be used for railroad purposes only.’ ” It continued, “ ‘If, for any reason, the *403 property... shall. .. cease to be used for railroad purposes and trains shall not be run over the railroad track,’ ” then the property reverts to the grantor. Id. at 573. In that case, the Court held that the parties clearly intended the property never to be used for anything other than a railroad.
These principles apply also to deeds creating easements. In Hickox v Chicago & C S R Co,[13] the deed for a right-of-way stated that if the property ceased “ ‘to be used and operated as a railroad . . . then .. . the right-of-way ... shall terminate.’ ” Id. at 619. The Court held that the land had to be used to operate a railway, even though it was not limited to running trains, or the easement ceased. Id. at 620-621.[14]
It is not uncommon for a deed creating an easement to describe the scope of the easement in general terms. When a controversy over scope of usage arises, it falls to courts to determine whether the parties intended to allow the land to be put to uses not specified in the deed. 1 Restatement Property, 3d, § 4.1, comment b, pp 498-499.
As a general statement, the easement holder is said to enjoy all rights reasonably necessary and proper to fully use the easement. Unverzagt v Miller, 306 Mich 260, 265; 10 NW2d 849 (1943), citing 9 RCL, p 784; 1 Restatement Property, 3d, § 4.10, p 592; 5 Restatement Property, § 450, comment e, pp 2904-2905.
*404 If the wording in a deed is not definitive, we infer from the circumstances surrounding the conveyance what unspecified uses the parties intended to allow. Newaygo Mfg Co v Chicago &W M R Co, 64 Mich 114, 122-123; 30 NW 910 (1887); 1 Restatement Property, 3d, § 4.10, comment a, p 592, and comment d, p 595. We bear in mind that easements are permanent rights. 1 Restatement Property, 3d, § 4.1, comment b, p 498. Also, the rights of the easement holder are superior to those of the owner in fee simple. Cantieny v Friebe, 341 Mich 143, 146; 67 NW2d 102 (1954), quoting Hasselbring v Koepke, 263 Mich 466, 475; 248 NW 869 (1933), quoting Harvey v Crane, 85 Mich 316, 322; 48 NW 582 (1891), citing Herman v Roberts, 119 NY 37; 23 NE 442 (1890), East Tennessee, V & G R Co v Telford’s Executors, 89 Tenn 293; 14 SW 776 (1890), and Kansas C R Co v Allen, 22 Kan 285 (1879).
We infer also that the parties intended that the permitted use of an easement will change over time absent language to the contrary in the deed. This inference effectuates the intent, which we presume the parties entertained, that the right-of-way remain viable. 1 Restatement Property, 3d, § 4.10, p 592.
In this case, the deed created a right-of-way for a transportation corridor, a kind of highway available for public use. See Elliott on Roads and Streets, § 1, Marthens v B & O R Co, 170 Va 33, 38; 289 SE2d 706 (1982), citing Eckington & Soldiers’ Home R Co v McDevitt, 191 US 103; 24 S Ct 36; 48 L Ed 112 (1903), and United States v Trans-Missouri Freight Ass’n, 166 US 290; 17 S Ct 540; 41 L Ed 1007 (1897).[15] The deed assigned the right-of-way “forever,” thus creating a *405 permanent interest. Its initial purpose was to permit the Mineral Range Railroad to build and run a railroad artery. It contains no defeasance or reverter language suggesting that the parties intended to forever limit the use of the right-of-way to a railroad.
The parties had to know that easements are transferable and binding on subsequent owners. The fact that they used broad language suggests that they intended to create a corridor that over time might accommodate modes of transportation other than railroads.[16] Thus, I would hold that this deed created a right-of-way that the parties intended not to limit to a railroad.[17] It was not extinguished as a matter of law when it ceased to be used for railroad purposes.
PLAINTIFF’S RIGHT-OF-WAY MAY BE USED AS A RECREATIONAL TRAIL
This Court has held that, where broad language in an easement permits uses not stated, those uses must not impose an additional or increased burden on the servient estate. Crew’s Die Casting Corp v Davidow, 369 Mich 541, 546; 120 NW2d 238 (1963), quoting Delaney v Pond, 350 Mich 685, 687; 86 NW2d 816 (1957). Use for recreational travel may include foot travel, bicycles, horses, and recreational vehicles. All have been adjudged to be within the scope of a right-of-way. See WWP, supra.
*406 Uses of a right-of-way interfere with the enjoyment of servient estates to varying degrees. With respect to recreational uses, hikers, equestrians, and bicyclists pose little interference. Snowmobiles and other off-road vehicles are more intrusive. But the most intrusive of recreational vehicles is less intrusive than trains. Trains may travel all hours of the day or night.
Defendant’s argument that the easement is more heavily used as a recreational trail than it was as a railroad misunderstands the scope of the easement. Defendant assumes that trains may run intermittently merely because that had been the custom. However, the easement here put no restrictions on the scheduling of Mineral Range’s trains. They could have run incessantly and still been within the scope of the easement.
Trains are loud and cause damaging vibration. Snowmobiles and recreational vehicles are less noisy and cause less vibration. Also, they are used on a seasonal basis. Other remedies are available to address problems associated with excessive speed or traffic volume on a recreational trail, such as speed limits and permit requirements.
Trains have at least as great a capacity as have recreational vehicles to serve as a means of transportation for lawbreakers. Trains can be boarded or departed from at locations where they must pass slowly. This case involves such a location, in a town near a bridge. A public recreational trail represents no greater safety hazard to adjacent landowners than trains that vagrants ride. Trains do not impose a substantially different burden on adjacent landowners than highways or harbors. Hence, recreational use of the right-of-way here does not substantially increase the burden on plaintiffs estate over its use by a railroad.
*407 CONCLUSION
From the record in this case, it appears that the section of the Soo Line railway corridor involved remains under the jurisdiction of the Surface Transportation Board. As a consequence, this Court is without jurisdiction to determine whether the easement on which it was built has been abandoned.
Moreover, even if the Soo Line consummated abandonment of the line through the STB’s predecessor, it does not follow that it abandoned the underlying easement. The trial court made the finding based on ample evidence that it did not. The Court of Appeals agreed. I have reached the same conclusion.
In addition, I agree with the lower courts that the easement was not restricted to use for a railroad. Quincy Mining Company and the Mineral Range Railroad intended to create a perpetual easement for a right-of-way. Initially, it was for a rail line, but it was not explicitly limited to that use. Also, the deed did not provide that the property right would revert to Quincy or its successor if the railroad abandoned its line. Consequently, I would find that the parties intended to create a transportation corridor that would remain viable “forever” as the easement holder’s transportation needs developed.
Today’s use of the right-of-way for recreational travel is consistent with its former use as a railway. The burden on the servient estate was not increased when the change occurred. In fact, recreational travel imposes a lesser burden.
Thus, I would affirm the result of the trial court and the Court of Appeals and hold that plaintiff may use the right-of-way for its trail.

 The Surface Transportation Board (STB) assumed the functions of the Interstate Commerce Commission (ICC) effective January 1, 1996. 49 USC 10101-16106; 49 USC 10903; 49 USC 10501(a)(1). Railroad Ventures, Inc v Surface Transportation Bd, 299 F3d 523, 530 (CA 6, 2002). For simplification, I refer to them both as the ICC because that was the agency that governed the Soo Line at the time in question.

 Beason v Beason, 435 Mich 791, 804; 460 NW2d 207 (1990).

 Transportation Act of 1920, ch 91, § 402(18)-(22), 41 Stat 477-478, recodified at 49 USC 10903(a) (1976 ed, Supp III).

 The ICC could even impose postabandonment conditions. Hay field at 633.

 As early as 1980, an ICC Notice of Final Rules and Exemptions made clear that the ICC retains jurisdiction of a rail line for which the notification of abandonment has not been submitted. 363 ICC 132, n 2 (1980). For a period in the mid-1980s, the ICC did not require the notice of consummation of abandonment. This period was after the abandonment certificate in this case expired. Also, the ICC later reinstated and codified the requirement to eliminate uncertainty over whether a line has been abandoned and is no longer under the jurisdiction of the ICC. This served to preclude a rail carrier from holding a track indefinitely in an uncertain status. Becker v Surface Transportation Bd, 328 US App DC 5; 132 F3d 60, 61 n 2, 63 n 4 (1997). See 49 CFR 1152.24(f), 1152.29(e)(2), 1152.50(e).

 The majority asserts that I rely “First and foremost” on this provision. Ante at 389. Actually, I rely primarily on the explicit terms of the certificate issued to the Soo Line. I cite the regulation to substantiate my conclusion that, because the authorization to abandon granted to the Soo Line appears to have lapsed, a new proceeding is required.

 I note that the federal railbanking program was but a glimmer in *397 Congress’s eye when the STB issued its certificate of abandonment to the Soo Line in 1982. The Soo Line could not have used this program at that time because it did not exist.

 Pub L 94-210, 90 Stat 144, as amended, 49 USC 10906 (1982 ed).

 National Trails System Act Amendments of 1983, Pub L 98-11, § 208, 97 Stat 42, 48 (1983) (codified as amended at 16 USC 1247(d) (Supp II, 1996).

 Accordingly, courts have not considered the ICC’s certification of a railroad company’s abandonment of a line as evidence that the company abandoned its easement. See Rail Abandonments-Use of Rights-of-Way as Trails; Rail Abandonments-Use of Rights-of-Way as Trails-Supplemental Trail Act Procedures, 5 ICC 2d 370, *3 (1989) (“Once a carrier exercises the authority granted in a regular abandonment certificate the line is no longer part of the national transportation system.”); Barney v Burlington N R Co, Inc, 490 NW2d 726, 729, 730 (SD, 1992), cert den sub nom Kaubisch v South Dakota, 507 US 914 (1993); Chevy Chase Land Co v United States, 355 Md 110, 169-171; 733 A2d 1055 (1999), cert den 531 US 957 (2000); State of Minnesota, by Washington Wildlife Preservation, Inc v Minnesota, 329 NW2d 543, 548 (Minn, 1983), cert den 463 US 1209 (1983).

 1993 US Dist LEXIS 15836 (WD Mich, 1993) (unpublished), aff d without opinion 74 F3d 1240 (CA 6, 1996).

 In Glosemeyer v United States, 45 Fed Cl 771 (2000), the United States Court of Federal Claims held that an application to the ICC for authority to abandon was clear evidence of intent to abandon an easement only if “confirmed by conduct.” Id. at 777. The Pennsylvania Supreme Court has also held that filing a certificate “must he coupled with external acts in furtherance of abandonment.” Buffalo Twp v Jones, 571 Pa 637, 647; 813 A2d 659 (2002).

 78 Mich 615; 44 NW 143 (1889).

 See also MacLeod v Hamilton, 254 Mich 653; 236 NW 912 (1931). In that case, a right-of-way to build a drain was granted “ ‘for no other purpose whatever ....’” Id. at 656. When it ceased to be used for a drain, the right-of-way ceased to exist. Id. at 656-657. Contrary to the majority’s assertion, before today’s decision, this Court has consistently applied these principles both to deeds for fee simple interests and to easement interests. Ante at 381.

 Thus, it would have been redundant for the parties to describe the easement as both a right-of-way and as a transportation corridor, as the majority seems to require. Ante at 380 n 44.

 This is similar to the concept that a right-of-way for a road to be used by horse-drawn buggies might later be used by automobiles. “[A]n easement holder may utilize such technological improvements as are reasonably necessary to carry out the purpose of the grant....” 25 Am Jur 2d, Easements and-Licenses, § 76, p 575 (2004).

 Defendant likely understood this at the time it acquired the servient estate. It did not object later when the Soo Line granted a utility easement in the right-of-way. Nor did it object during the first nine years that plaintiff used the right-of-way as a recreational trail.