CHAPMAN v PEOPLES COMMUNITY HOSPITAL AUTHORITY OF
MICHIGAN

Docket No. 73891. Submitted July 16, 1984, at Detroit.—Decided
October 18, 1984.

E. Forrest Chapman, a physician, brought a declaratory judgment
action in Wayne Circuit Court against Peoples Community
Hospital Authority of Michigan, Annapolis Hospital and Ron-
ald B. Czarneke, administrator of Annapolis Hospital, seeking
to have his suspension of hospital privileges set aside. Dr.
Chapman's hospital privileges at Annapolis Hosptial had been
suspended when he had refused to pay a $100 assessment
which was to be used to furnish a medical library at the
hospital. Dr. Chapman alleged that the provision in the com-
munity hospital authority act which authorized the promulga-
tion of the bylaws and rules under which the assessment was
made was an unconstitutional grant of legislative power, that
the rule permitting assessments and suspension of hospital
privileges for failure to pay an assessment was violative of due
process, that the provision in the hospital's rules providing for
assessments and suspension was inconsistent with the hospi-
tal's bylaws and that the purpose of the assessment, the acqui-
sition of a medical library, was inconsistent with the require-
ment that the hospital itself provide the library. The matter
was submitted to the trial court, Harold M. Ryan, J., on briefs
and oral arguments. Judge Ryan thereafter found that plaintiff
had failed to state a claim upon which relief could be granted
and entered a judgment of no cause of action. Plaintiff ap-
pealed. *Held:*

1. Plaintiff failed to challenge the sufficiency of the limits and
standards incorporated into that portion of the community

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorney General § 11.
  20 Am Jur 2d, Courts § 189.
[2, 3] 40 Am Jur 2d, Hospitals and Asylums §§ 8, 10, 11.
  What statute of limitations governs physician's action for wrongful
    denial of hospital privileges. 3 ALR4th 1214.
  Exclusion or discrimination against physician or surgeon by hospi-
    tal. 37 ALR3d 645.
[4] 40 Am Jur 2d, Hospitals and Asylums § 4.

hospital authority act which is here at issue but chose rather to rely on an opinion of the Attorney General dealing with another portion of the act. Not only is the opinion of the Attorney General not binding on the Court of Appeals, but that opinion was clearly limited to a portion of the predecessor act not at issue here. In the absence of an adequate challenge to the portion of the act here at issue, plaintiff's claim of improper delegation of legislative powers was deemed to be abandoned.

2. Since the bylaws and rules as promulgated provided for adequate notice and opportunity to be heard, they are not violative of due process.

3. The disputed assessment as contained in the resolution of the executive committee is consistent with the rule which provides that the executive committee may levy assessments on the medical staff. That rule is not inconsistent with the bylaw providing for the adoption of rules governing professional work at the hospital. On the basis of the same reasoning, the assessment resolution, and the resulting suspension by reason of the failure to pay the assessment, is not inconsistent with the statutory grant of power to the hospital authority.

4. The guidelines of the Joint Committee on Accreditation of Hospitals do not require that a hospital itself pay for a medical library out of its budget. The guidelines require only that library services be available to the medical and hospital staff. Accordingly, the acquisition of a medical library through assessments on the medical staff is not contrary to any mandate of the accreditation guidelines.

Affirmed.

1. COURTS — PRECEDENTS — COURT OF APPEALS — OPINION OF THE ATTORNEY GENERAL.

The Court of Appeals is not precedentially bound by conclusions of the Attorney General as expressed in his opinions.

2. HOSPITALS — COMMUNITY HOSPITALS — PHYSICIANS AND SURGEONS — SUSPENSION OF HOSPITAL PRIVILEGES — DUE PROCESS.

The suspension of staff privileges of a physician by a community hospital authority for failure to pay an assessment required by staff rules and bylaws promulgated pursuant to the community hospital authority act is not violative of due process where, in accordance with the rules and bylaws, the physician was given written notice that failure to pay the assessment would result in suspension and was afforded an opportunity to be heard.

3. HOSPITALS — COMMUNITY HOSPITALS — SUSPENSION OF HOSPITAL PRIVILEGES — COMMUNITY HOSPITAL AUTHORITY ACT — STAFF RULES.

The provision in the community hospital authority act which

provides that a community hospital authority shall adopt by-laws, rules and policies governing the operation and professional work of the hospital and may revoke or suspend the privileges of a physician for violation of those bylaws, rules or policies is sufficiently broad to authorize the adoption of rules which will result in the suspension of the privileges of any physician who fails to pay an assessment levied for acquisition of a medical library for the hospital, since the acquisition of a medical library is sufficiently related to the professional work of the hospital and physicians (MCL 331.6; MSA 5.2456[6]).

4. HOSPITALS — MEDICAL LIBRARIES — ACCREDITATION OF HOSPITALS.
The guidelines of the Joint Commission on Accreditation of Hospitals do not require that the medical library at a hospital be paid for by the hospital itself but rather require that library services be made available to the medical and hospital staff; a library at a hospital which is acquired through assessments on the medical staff members satisfies the requirements of the guidelines of the Joint Commission on Accreditation of Hospitals.

*Durant & Durant, P.C.* (by *Richard Durant*), for plaintiff.

*Cozadd, Shangle, Smith & Andrews* (by *Daniel J. Andrews*), for defendants.

Before: V. J. BRENNAN, P.J., and ALLEN and GRIBBS, JJ.

PER CURIAM. Plaintiff appeals as of right from the trial court's order of no cause of action after submission of the case on briefs and oral argument by stipulation of the parties. We affirm.

Plaintiff is a physician whose staff privileges were suspended by defendant Peoples Community Hospital Authority, through its Annapolis Hospital Executive Committee, for refusal to pay a $100 assessment against medical staff members to furnish a medical library. Plaintiff admits that he refused payment, but challenges defendant's power to make such an assessment and to impose sanctions for noncompliance.

The Annapolis Hospital Executive Committee passed Resolution No. 75-81, which reads:

"According to the By-Laws, an assessment of $100.00 be made to contribute to the creation of a medical library at Annapolis Hospital, in order to fulfill the criteria for continuing the medical education program of the Michigan State Medical Society."

Assessments are authorized by Art VII of the Medical Staff Rules, Regulations and Policies of the Peoples Community Hospital Authority, passed by the Board of Directors of the Authority. Art VII, entitled Duties & Assessments, provides:

"Members of the medical staff shall pay such dues as *are determined by the action of the Executive Committee of each hospital staff.* Funds accumulated from dues will be used as will be determined by the Executive Committee of the medical staff. Assessments in addition to the regular dues may be levied on all members of the medical staff by action of the Executive Committee, or by action of the majority of the medical staff. *Members whose dues or assessments have not been paid after two written notifications, shall be recommended by the Secretary of the staff to the Executive Committee of the medical staff for suspension."* (Emphasis added.)

The resolution's reference to the By-Laws ("according to the By-Laws") would appear to be to Art XII, Sec. 12.11 of the Peoples Community Hospital Authority By-Laws passed by its Board of Directors:

"LIBRARY COMMITTEE. The Library Committee will be composed of not less than three members. It shall meet periodically and *make recommendations* to its Administrator *for the purchase of medical and dental books and periodicals;* advise in the disposition of obsolete material and *assist in the acquisition of monies* for the Library Book Fund." (Emphasis added.)

The passage of the By-Laws and the Rules, Regulations and Policies, as well as suspension for violations of these provisions, is authorized by MCL 331.6; MSA 5.2456(6):

"The board shall adopt bylaws, rules, and policies governing the operation and professional work of the hospital and the eligibility and qualifications of its medical staff. *Physicians,* nurses, attendants, employees, patients, and persons approaching or on the premises of the hospital and furniture, equipment and other articles used or brought on the premises *shall be subject to the bylaws, rules, and policies as the hospital board may adopt or authorize to be adopted. The board may* deny or revoke staff membership, or *suspend* or reduce *hospital privileges to a physician who violates a provision of the medical staff bylaws, rules, and policies.* The medical advisory committee, with the approval of the hospital board, shall adopt rules and policies governing the professional work of the hospitals and the eligibility and qualifications of their medical staffs. The rules and policies shall conform, as nearly as practicable, to the applicable standards recommended by the joint commission on accreditation of hospitals." (Emphasis added.)

In addition, the guidelines of the Joint Commission on Accreditation of Hospitals provide:

"PRINCIPLE

"Principle. The hospital shall provide library services appropriate to the professional and technical needs of the medical and hospital staff.

"Standard. Library services shall be made available to the medical and hospital staff. There shall be books, periodicals, and other materials appropriate to meet their needs."

Plaintiff first attacks MCL 331.6; MSA 5.2456(6), which authorizes the Medical Advisory Board to adopt rules and policies conforming to the stan-

dards of the Joint Commission on Accreditation of Hospitals, as an attempt to delegate legislative power in violation of Const 1963, arts 3 and 4. He relies entirely on OAG, 1951-1952, No 1,306, p 164 (January 17, 1951), which examined the statute's predecessor, 1915 PA 47, and found that the final sentence of the statute improperly delegated legislative power in violation of Const 1908, arts 4 and 5 (now see Const 1963, arts 3 and 4).

"It may well be doubted, therefore, whether the incorporation of the standards of the American college of surgeons [amended in 1972 to the Standards of the Joint Commission on Accreditation of Hospitals] into a statute by reference only lies within the power of the legislature, but this question is passed because of the uncertainty of the court decisions thereon. Assuming, therefor *[sic]*, that the legislature may incorporate into our statutes by reference only the provisions of private documents and the recommendations of private corporations, the question is has it validly done so in this case? *[sic]* In my judgment the answer is 'no.'

"In the first place, as already mentioned, the act under consideration contains no standards by which it can be determined which of the standards recommended by the American college of surgeons are 'applicable,' or how far it is 'practicable' to adopt those standards thought to be 'applicable.' The net result of the whole matter is that the loose language used in the grant of power to the medical advisory committee and hospital board of a joint hospital authority amounts to a grant of legislative power. There is nothing contained in the act by which it can be determined whether a particular rule, regulation, policy or standard is within or without the terms of the act. Each joint hospital authority might, with the best of intention, arrive at any set of standards for its operation that it deemed best or most expedient. I am therefore compelled to hold the last sentence of § 6 of P.A. 1945, No. 47, invalid as an attempted delegation of legislative power in violation of articles 4 and 5 of the constitution." OAG, *supra,* pp 169-170.

We first note that the opinions of the Attorney General are not precedentially binding. *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231, 237; 160 NW2d 778 (1968), *lv den* 381 Mich 765 (1968). Secondly, the Attorney General's opinion found the allegedly invalid sentence severable from the remainder of the statute:

"When originally passed the 1945 act contained, in § 10 thereof, a severability clause. This clause was repealed by P.A. 1947, No. 129, § 4, which declared the general severability clause, C. L. 1948, § 8.5, to be applicable. Under familiar rules of statutory construction the invalidity of the mentioned sentence will not affect the validity of the remainder of the act." OAG, *supra,* p 171 (citations omitted).

The remainder of the statute provides for the adoption of bylaws, rules, and policies governing the operation and professional work of the hospital and the eligibility and qualifications of its medical staff, as well as suspension for the violation of provisions adopted. Plaintiff has not challenged the remainder of the statute.

Third, the Michigan Supreme Court has set out three principles for determining whether a statute contains sufficiently defining limits and standards to avoid improper delegation of legislative powers. *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976):

"First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood* [274 Mich 47; 264 NW 285 (1935)].

"Second, the standard should be 'as reasonably precise as the subject matter requires or permits'. *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).

"The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. * * *

"Third, if possible the statute must be construed in such a way as to 'render it valid, not invalid', as conferring 'administrative, not legislative' power and as vesting 'discretionary, not arbitrary, authority'. *Argo Oil Corp v Atwood, supra,* 53."

Plaintiff has failed to address these considerations. In light of plaintiff's failure to challenge the remainder of the statute and address the considerations involved in a determination of sufficiency of standards incorporated in the statute, we deem this issue abandoned.

Plaintiff further argues that Art VII of the Rules, Regulations and Policies, which permits assessments and suspension for failure to pay the assessments, violates due process. Plaintiff cites *Milford v Peoples Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968). *Milford,* however, is easily distinguishable. In *Milford,* the Court considered a bylaw which provided that a physician could have his privileges reduced or revoked after notice and hearing, when such a reduction or revocation would appear to be "to the best interest[s] of the hospital and its patients". *Milford, supra,* p 56. The Court reasoned that this language "attempt[ed] to confer upon the executive committee the arbitrary power to reduce privileges according to their whim or caprice, subject only to appeal to the staff and ultimately to the board, whose powers of review are equally arbitrary". *Milford, supra,* p 62.

In contrast, Art VII of the Rules, Regulations and Policies in the instant case provided for suspension after two written notifications for specific conduct—failure to pay dues or assessments. Plaintiff admits he was advised of the assessment and

pursued appeals to the Medical Advisory Committee and Appellate Review Committee. Plaintiff has alleged no lack of notice or opportunity to be heard. We therefore find that plaintiff has not been denied due process of law.

Plaintiff next argues that the provision providing for assessment and suspension for failure to pay is invalid because it is inconsistent with the Medical Staff By-Laws as required by Art XV, Sec. 15.1 of the By-Laws:

"The Staff of each hospital shall adopt rules, regulations and policies governing the professional work in each hospital *not inconsistent* with these By-Laws, which may from time to time be amended." (Emphasis added.)

He contends that the By-Laws permit removal of the physician solely for professional incompetence, and that suspension under the Rules, Regulations and Policies for failure to pay an assessment thus violates this consistency provision. We disagree. Art VI, Sec. 6.7, of the By-Laws authorizes suspension for "violation of any of these By-Laws or the rules and regulations of the Staff". By not paying the assessment, plaintiff has violated Art VII of the Rules, Regulations and Policies.

Plaintiff additionally argues that, according to Art XV, Sec. 15.1 of the By-Laws (see above), all rules, regulations and policies must deal solely with professional work which he defines as patient care and physician conduct. In the first place, the assessment in this case can be viewed as related to the professional work of the hospital and the physicians. Access to an updated medical library may be crucial at times to the performance of a physician. Secondly, we do not read this article as limiting rules, regulations and policies to profes-

sional conduct and patient care. Although under Art XV, Sec. 15.1, rules, regulations and policies governing professional work should ˅be consistent with the By-Laws, there is nothing in this provision which prohibits the passage of additional rules, regulations and policies dealing with hospital matters not directly related to professional conduct and patient care, but necessary to the functioning of the hospital.

Plaintiff next contends that MCL 331.6; MSA 5.2456(6) authorizes suspension of staff privileges only for unprofessional work by a physician. He argues that, although privileges can be suspended for the violation of bylaws, rules and policies, the bylaws, rules and policies must "[govern] the operation and professional work of the hospital and the eligibility and qualifications of its medical staff". He apparently argues that the assessment and suspension was outside the scope of the operation and professional work of the hospital and the eligibility and qualifications of the physicians. As noted above, the acquisition of a medical library relates sufficiently to the professional work of the hospital and the physicians to fall within the subject matter of the bylaws, rules and policies.

Plaintiff finally argues that the resolution itself is invalid because (1) it refers to the bylaws and the bylaws do not authorize assessments, (2) the resolution did not fulfill its announced purpose of meeting the criteria of the continuing medical education program, and (3) the guidelines of the Joint Commission on Accreditation of Hospitals requires that the hospital itself provide library services. We do not find plaintiff's argument persuasive. The By-Laws, Art 12, Sec. 12.11, do provide for the acquisition of monies for a medical library. One of the purposes of the resolution was "to contribute to the creation of a medical library

in Annapolis Hospital". The furnishing of the library would comply with the standard of the Joint Commission on Accreditation of Hospitals that "library services shall be made available to the medical and hospital staff". The additional purpose, the medical education program, was apparently an attempt to add fluff to the resolution. When the assessment is viewed with respect to its primary purpose of the creation of a medical library, the assessment is valid.

Plaintiff's additional argument that one of the principles in the guidelines of the Joint Commission on Accreditation of Hospitals prohibits the assessment by requiring that "the *hospital* shall provide library services" is also not persuasive. The Commission's standard states that "library services shall be made available to the medical and hospital staff". Nothing in either the principle or standard restricts the funding of the library program to the hospital's budget. The guidelines merely mandate that library services be provided.

Affirmed. Costs to defendant.