LUDINGTON & NORTHERN RAILWAY v THE EPWORTH
ASSEMBLY

Docket No. 123238. Submitted February 13, 1991, at Grand Rapids.
Decided March 18, 1991, at 9:30 A.M. Leave to appeal sought.

The Ludington & Northern Railway brought an action in the
Mason Circuit Court against the Epworth Assembly, a resort
association, seeking money damages, a declaration of the inter-
ests of the parties in certain fifty-foot-wide strip of land, and
injunctive relief. The land in question was conveyed by the
defendant to the plaintiff in five parcels between 1895 and 1916
by deeds which provided that the land was to be used for
railroad purposes. Following a bench trial, the court, Richard I.
Cooper, J., held that the plaintiff had acquired fee simple title
in the first four parcels subject to a possibility of reverter, but
that the possibility of reverter had been extinguished by 1968
PA 13 by reason of the defendant's failure to give statutory
notice of an intent to retain the right of termination. The court
further held that the plaintiff had acquired only an easement
interest in the fifth parcel and that interest had been termi-
nated by abandonment. The plaintiff appealed, arguing that the
trial court erred in finding that the easement interest had been
lost by abandonment. The defendant cross appealed, arguing
that the statute extinguishing the right of termination is
unconstitutional or, in the alternative, inapplicable in this case.

The Court of Appeals *held:*

The trial court properly held that the defendant's failure to
record a notice of its desire to preserve its possibilities of
reverter as required by 1968 PA 13 rendered those interests
unenforceable and that 1968 PA 13 neither impermissibly
impairs a constitutionally protected contract right nor deprives
the defendant of property without due process of law. However,
the trial court erred in finding that the plaintiff's easement

REFERENCES

Am Jur 2d, Abandoned, Lost, and Unclaimed Property § 41; Estates
§§ 5, 6, 183, 189.
Validity of statute canceling, destroying, nullifying, or limiting
enforcement of possibilities of reverter or rights of re-entry for
condition broken. 87 ALR3d 1011.

interest in the fifth parcel had been lost because of abandonment.

1. The deeds of the first four parcels each conveyed a determinable fee with a possibility of reverter, subject to the provisions of 1968 PA 13.

2. The enactment of 1968 PA 13 was for the purpose of avoiding the impairment of the marketability of title caused by ancient reversionary interests, which is a reasonable public purpose. Preserving the enforceability of reversionary interests by requiring that a notice of that intent be filed periodically is a reasonable method of dealing with the problems caused by latent reversionary interests. Denying enforcement of interests not preserved by proper notice does not constitute the taking of property without due process of law.

3. The imposition of the requirement that periodic notice must be given in order to preserve the right to enforce a right of reverter is not violative of the provisions of the United States and Michigan Constitutions prohibiting impairment of contractual obligations. The act does not provide for automatic extinguishment of possibilities of reverter or rights of entry, rather it extinguishes those rights only if the opportunity to preserve those interests has not been undertaken by the filing of a notice of that intent.

4. To prove abandonment of the easement interest in the fifth parcel, both an intent to relinquish the property and some act putting that intent into effect must be shown. The fact that the property is not being used does not establish, by itself, an intent to abandon. The testimony does not show an intent by the plaintiff to abandon, but rather shows a clear intent to retain the right of way.

5. Although the plaintiff is a common carrier, it is also a private corporation, and the terminable interests acquired privately by it are not terminable interests held for public purposes within the meaning of 1968 PA 13.

Affirmed in part and reversed in part.

1. PROPERTY — ABANDONED AND LOST PROPERTY — NONUSE — INTENT TO ABANDON.

Abandonment of property is established by proof of an intent to relinquish the property and of acts putting that intention into effect; nonuse of property, by itself, is insufficient to show abandonment; rather, nonuse must be accompanied by some act showing a clear intent to abandon.

2. PROPERTY — FUTURE INTERESTS — POSSIBILITY OF REVERTER — RIGHT OF ENTRY.

A possibility of reverter refers to the type of future interest in

property remaining in a grantor where there has been created a fee simple determinable; a right of entry refers to the future interest in property remaining in the grantor where an estate on a condition subsequent has been created; the distinction between the two interests is that in the former the estate reverts upon the occurrence of the event by which it is limited, while in the latter the estate in fee does not terminate until entry by the person having the right.

3. Property — Future Interests — Terminable Interests — Notice.

A person desiring to preserve a right of termination pursuant to a terminable interest must record a written notice of that intent within a period of not less than twenty-five years nor more than thirty years after the creation of the terminable interest or prior to March 29, 1969, whichever is later (1968 PA 13, MCL 554.63, 554.65; MSA 26.49[13], 26.49[15]).

4. Property — Future Interests — Possibility of Reverter — Public Purposes.

A possibility of reverter with respect to a strip of property sold to a privately held common carrier which was to revert when the property was no longer used for railroad purposes was not a terminable interest held for public purposes within the meaning of the statute limiting the duration of terminable interests in real property where the common carrier was not established for the purpose of serving the general public (1968 PA 13, MCL 554.64; MSA 26.49[14]).

5. Property — Future Interests — Constitutional Law — Impairment of Contract.

The statute extinguishing the enforceability of terminable interests in property in the absence of the periodic filing of a notice of an intent to preserve a right of termination is neither a constitutionally impermissible impairment of a contract right nor a constitutionally impermissible deprivation of property without due process of law (US Const, art I, § 10 and Am XIV; 1963 Const, art 1, §§ 10, 17; MCL 554.61 et seq.; MSA 26.49[11] et seq.).

*Prince, Barecki, Nicholas & Burrows* (by *Clifford W. Prince*), for the plaintiff.

*O'Toole, Johnson, Potter, Rolf, Grafton & Eklund* (by *Harold M. Street*, of Counsel), for the defendant.

Before: CAVANAGH, P.J., and MAHER and FITZ-
GERALD, JJ.

MAHER, J. Plaintiff appeals and defendant cross
appeals from a circuit court judgment, entered
following a bench trial determining the parties'
respective interests in five adjoining strips of land.
With regard to four of the strips, the trial court
held that plaintiff had acquired a fee interest and
that any possibility of reverter possessed by defen-
dant was extinguished pursuant to 1968 PA 13,
MCL 554.61 *et seq.*; MSA 26.49(11) *et seq.* With
regard to the fifth strip, the trial court held that
only an easement interest was acquired by plain-
tiff, but that this interest was terminated by aban-
donment. In this appeal as of right, defendant
contends that 1968 PA 13 is unconstitutional or,
alternatively, that it is inapplicable, while plaintiff
contends that the trial court erred in finding that
an abandonment of its easement interest occurred.
We affirm in part and reverse in part.

The five parcels of land at issue in this case are
adjoining fifty-foot-wide strips of land upon which
plaintiff's railroad track is located. These strips of
land pass through the land of defendant, a Michi-
gan corporation comprised of owners of resort
cottages situated northwest of Ludington, Michi-
gan, along the shores of Lake Michigan. The oper-
ation of plaintiff's railroad has been a source of
controversy between plaintiff and defendant for
over seventy years. Twice, their disputes have
reached our Supreme Court. See *Epworth Assem-
bly v Ludington & N R Co,* 223 Mich 589; 194 NW
562 (1923), and *Epworth Assembly v Ludington &
N R Co,* 236 Mich 565; 211 NW 99 (1926).[1] Origi-
nally, defendant desired a railroad to service its

---

[1] A background on the origin of the parties and their early dealings
may be gathered from a review of these cases.

members, providing them with transportation to its grounds. Accordingly, in 1895, defendant conveyed the southernmost strip of the five strips of land to plaintiff "to be used for railroad purposes only." In 1914, defendant sought to extend the railroad to some adjoining land to the north. When the extension was accomplished, it was agreed that plaintiff would be allowed to transport sand that was mined at the northernmost point of the extension because of the uncertainty of the passenger business in the extended portion. As it turned out, passenger service decreased and then ceased altogether in 1919 or 1920, and sand was hauled from that time on. See *Epworth Assembly,* 236 Mich 568.

Plaintiff's interest in the four northern strips of land, representing the extended portion of the railroad, was acquired pursuant to four more conveyances from defendant to plaintiff that were executed in 1916. The second of the five strips, being immediately to the north of the southernmost strip conveyed in 1895, was conveyed pursuant to a quitclaim deed stating that the conveyance was "for railroad purposes only." Proceeding northward, the third strip of land was conveyed pursuant to a quitclaim deed containing the following language:

> [I]f, for any reason the property premises or land above described shall, for one year or longer, cease to be used for railroad purposes, . . . in that case all of the land herein described . . . shall revert to the Epworth Assembly . . . .

The document conveying the fourth strip of land contained language similar to that of the second. Finally, the document relating to the fifth and northernmost strip of land conveyed "[a]ll the

sand down to the level of the road bed" in the described premises, and "[a]lso a right-of-way for railroad purposes on and over said land fifty (50) feet wide." Beginning with the southernmost conveyance and proceeding north, these conveyances shall hereinafter be referred to as conveyances one through five respectively.

Plaintiff last operated a train on the track in February 1981. Thereafter, between 1982 and 1988, defendant erected a number of barricades across the strips of land, paved over two crossings, planted some trees, placed soil on some of the land, and ran a number of water and sewer pipes under the tracks.

On March 8, 1988, plaintiff commenced the instant action, seeking money damages, an injunction to prevent defendant from constructing barricades, and a declaration of the interests of the parties in the five strips of land. Defendant responded, contending both that plaintiff had abandoned its interests in the strips of land and that the operation of the railroad constituted a nuisance. Prior to trial, defendant brought a motion challenging the constitutionality of 1968 PA 13, MCL 554.61 *et seq.*; MSA 26.49(11) *et seq.*, which provides for the extinguishment of certain reversionary interests in land. The trial court ruled that the act was constitutional, and further held that § 4(c) of the act, MCL 554.64(c); MSA 26.49(14)(c), providing that the act does not apply to terminable interests held for public purposes, was not applicable.

After plaintiff agreed to waive its claim for money damages, a bench trial was held on May 3 and 4, 1989.

At trial, plaintiff's general manager, Bernard Sterk, testified that fifteen derailments occurred on plaintiff's tracks between 1976 and 1980, but

that in 1977 plaintiff spent approximately $170,000 to rebuild portions of the track so that it could accommodate larger railroad cars. Nevertheless, by the end of 1978, plaintiff's board of directors began considering the possibility of abandoning the railroad because of the loss of customers. Thereafter, business continued to decline and many customers began to insist on receiving sand by truck. Consequently, sand was last hauled on plaintiff's tracks in February 1981. Although trains have not run since that time, plaintiff has continued to derive revenue from investments and the rental of its cars.

In 1982, Sterk had a letter hand-delivered to defendant, asking it to restore a portion of the track which it had removed when a water line was put in. The letter also informed defendant that plaintiff had no intention of abandoning the railroad and that it hoped to use the track again when the business climate improved.

Kenneth Howell, one of plaintiff's superintendents, testified that ever since the train stopped operating he has walked the track probably once a month making inspections. There was also testimony that in 1983 plaintiff replaced some railroad ties that had been removed by defendant when the water line was installed, and that in 1984 plaintiff hired laborers to clear the entire length of the track of weeds.

Defendant's general manager, William Karlson, testified that derailments would occur three or four times a month from 1975 on, often blocking traffic for an average of two hours. He believed these derailments posed a hazard to the people who lived there because of the heavy equipment needed to correct a derailment. Residents of the Assembly also testified regarding the disruptive nature of the derailments and the loud screeching

noises that occurred when the trains negotiated the track's curves.

Karlson testified that the several alterations defendant made to the strips of land subsequent to February 1982 were made pursuant to the Board of Trustees' purported belief that the land had reverted back to defendant one year after trains had ceased running.

After the parties submitted written closing arguments, the trial court found that the title received by plaintiff pursuant to conveyances one through four (the four southern strips of land) consisted of a fee simple determinable interest, but that defendant's possibility of reverter in each of the strips of land had been extinguished pursuant to 1968 PA 13, since defendant never recorded a written notice indicating its desire to preserve such interests. MCL 554.65; MSA 26.49(15). Thus, the court declared plaintiff the fee simple owner of the four southern strips of land and enjoined defendant from interfering with plaintiff's use of the property. However, the court also held that, due to the state of the track and the large number of derailments, operations of trains over the tracks constituted a de facto nuisance. Additionally, with regard to the fifth and northernmost strip of land (received pursuant to conveyance number five), the trial court determined that the title received by plaintiff was that of an easement in gross, but that this interest had been terminated by abandonment. Both parties now appeal as of right.

I

Neither party disputes the trial court's determination that the interest received by plaintiff pursuant to conveyance number five was that of an easement. However, in its sole issue on appeal,

plaintiff argues that the trial court erred when it found that this easement interest was lost because of abandonment. We agree.

In finding that an abandonment of plaintiff's easement interest occurred, the trial court stated:

> Since February of 1981, the corporate minutes of plaintiff shows an intent to improve its rail freight traffic. However, it is the Court's understanding that it is not plaintiff's intent that controls but instead actual usage. . . .
>
> The Court is very reluctant to drive the final nail in a coffin especially where a corporation has tried over the years to reestablish itself as a viable corporation. However, it is readily apparent that the line has not been maintained and this Court therefore determines that the nonusage and deterioration constitutes abandonment.

Plaintiff argues, and we agree, that the trial court erred in finding that an abandonment occurred solely because of nonuse.

To prove abandonment, both an intent to relinquish the property and external acts putting that intention into effect must be shown. *Strong v Detroit & M R Co,* 167 Mich App 562, 569; 423 NW2d 266 (1988). Nonuse, by itself, is insufficient to show abandonment. *Hustina v Grand Trunk W R Co,* 303 Mich 581, 587; 6 NW2d 902 (1942); *Strong,* p 569. Rather, nonuse must be accompanied by some act showing a clear intent to abandon. *McMorran Milling Co v Pere Marquette R Co,* 210 Mich 381, 393; 178 NW 274 (1920); *Odoi v White,* 342 Mich 573, 576; 70 NW2d 709 (1955); *Hustina,* p 587.

The trial court relied solely on *Hickox v Chicago & C S R Co,* 78 Mich 615; 44 NW 143 (1889), in support of its conclusion that an intent to abandon need not be shown. The defendant in *Hickox* was

granted a railroad right of way pursuant to a deed containing a clause providing that if the railway "should cease to be used and operated as a railroad, . . . the right of way granted thereunder shall terminate." The Supreme Court held that "when th[e] right of way ceased to be used and operated as a railroad, and was used only for the storing of cars, *the defeasance became operative,* and the conveyance had no further force or effect." *Id.,* p 617. Because the right of way in *Hickox* was lost, not because of abandonment of an easement, but because of the operation of a defeasance clause, we conclude that the trial court's reliance on *Hickox* was misplaced. Moreover, the conveyance in the instant case did not contain a similar conditional clause.

We find that *Strong* is more on point. In that case, the defendant railroad had removed its tracks from a right of way approximately thirty years earlier and, before that, recorded a notice describing the right of way as being located on either side of the "abandoned" tracks. Nevertheless, this Court agreed that an abandonment of the right of way had not occurred because testimony that the property was inspected on a monthly basis negated an intent to abandon. In addition, this Court construed the use of the word "abandoned" in the recorded notice as referring to the fact that the property was no longer being used in the defendant's operations, not that defendant intended to abandon its property interests. *Id.,* p 569. Also see *McMorran Milling Co.*

Aside from nonuse, there was no evidence in this case showing an act with an intent to abandon. Rather, the evidence showed just the opposite, and the trial court so found.

Notwithstanding, defendant argues that plaintiff's easement was nevertheless lost under the

rule that where an easement is granted for a particular purpose, abandonment or cessation of the purpose terminates the easement. See *MacLeod v Hamilton,* 254 Mich 653; 236 NW 912 (1931) (holding that an easement for drainage purposes was abandoned where the easement was dormant for fifty-four years and the proposed drainage was established elsewhere), and *Anderson v Schmidt,* 16 Mich App 633; 168 NW2d 437 (1969) (holding that an easement over land for purposes of getting to a boathouse terminated when the boathouse no longer existed). The easement in this case was created "for railroad purposes," and there has been no showing that this purpose is no longer existent or necessary. Moreover, it does not follow from mere nonuse that the purpose for which an easement was created no longer exists.

Therefore, given the trial court's finding that plaintiff did not intend to abandon its railroad right of way, a finding clearly supported by the evidence, we hold that the right of way was not terminated by abandonment. Accordingly, we reverse that portion of the trial court's judgment declaring that plaintiff's easement interest in the northernmost strip of land was terminated by abandonment.

## II

The remaining issues on appeal, all raised by defendant in its cross appeal, relate to the applicability and constitutionality of 1968 PA 13, MCL 554.61-554.65; MSA 26.49(11)-26.49(15), an act restricting the duration and enforceability of possibilities of reverter and rights of entry.

Traditionally, a "possibility of reverter" refers to the type of future interest remaining in a grantor

where there has been created a fee simple determinable, 28 Am Jur 2d, Estates, § 182, p 319, whereas a "right of entry" refers to the interest remaining in the grantor where an estate on condition subsequent has been created. *Id.,* § 188, p 328. The distinction between the two interests is that in the former the estate reverts at once on the occurrence of the event by which it is limited, while in the latter the estate in fee does not terminate until entry by the person having the right. *Id.,* § 183, p 323.

In *Epworth Assembly,* 236 Mich 574, our Supreme Court construed the documents relating to conveyances one and three and held that the title conveyed was a determinable fee.[2] Thus, with respect to the first and third strips of land, this holding constitutes res judicata. *West Michigan Park Ass'n v Fogg,* 158 Mich App 160, 164; 404 NW2d 644 (1987). Furthermore, although *Epworth Assembly* did not specifically discuss conveyances two and four, the trial court held, and we agree, that the similarity between these conveyances and the first one requires the conclusion that they too conveyed a fee simple determinable interest.

By enacting 1968 PA 13, which became effective March 29, 1968, our Legislature sought "to limit the duration of possibilities of reverter and rights of entry in conveyances of real property in certain cases." Section 3 of the act, MCL 554.63; MSA 26.49(13), provides:

A right of termination under a terminable interest which was created prior to the effective date of this act is unenforceable if the specified contingency does not occur within 30 years after the

---

[2] After noting the clear reverter clause in conveyance number three, the Court then construed the language "to be used for railroad purposes only" in conveyance number one as conveying a similar title, that being a fee simple determinable.

terminable interest was created or within 1 year after the effective date of this act, whichever is later.

The act defines "terminable interest" as a possessory or ownership interest in real property which is subject to termination by a provision in a conveyance or other instrument which either creates a right of reversion to a grantor or his heirs, successors, or assigns or creates a right of entry on the occurrence of a specified contingency. MCL 554.61(a); MSA 26.49(11)(a). A "specified contingency" is defined as the event described in a conveyance or other instrument creating a terminable interest, the occurrence of which requires or permits the divesting of the terminable interest. MCL 554.61(b); MSA 26.49(11)(b).

A saving provision is contained in § 5 of the act, MCL 554.65; MSA 26.49(15), which provides that a person desiring to preserve a right of termination may do so by recording a written notice of such intent within a period of not less than twenty-five nor more than thirty years after the creation of the terminable interest or within one year after the effective date of the act, whichever is later. Thereafter, a right of termination may be continually preserved by recording another written notice every thirty years.

In this case, it is undisputed that defendant never recorded a written notice indicating its desire to preserve its possibilities of reverter. Notwithstanding, defendant argues that these interests were not lost because 1968 PA 13 is either inapplicable or unconstitutional. We disagree.

A

Defendant's first challenge concerns the scope of

1968 PA 13. We note, however, that defendant has not preserved this initial challenge by first raising it in the trial court. *Comm'r of Ins v Advisory Bd of the Michigan State Accident Fund,* 173 Mich App 566, 578; 434 NW2d 433 (1988). Regardless, the claim is meritless because it is premised upon defendant's erroneous contention that the interest it originally retained was a true reversion rather than a possibility of reverter. Where a qualified fee is determinable upon an event which is *certain* to happen, there remains a true reversion, and not a possibility of reverter. 28 Am Jur 2d, Estates, § 182, p 321. In this case, however, the fee conveyed to plaintiff with respect to the first four strips of land was subject to termination only if the land was not used for railroad purposes. Because such an event was not certain to happen, defendant retained only a possibility of reverter, not a true reversion.[3] Moreover, defendant's interests are clearly ones encompassed within both the title and object of 1968 PA 13; therefore, application of the act to such interests does not violate the title-object clause of Const 1963, art 4, § 24. See *Builders Square v Dep't of Agriculture,* 176 Mich App 494, 497-498; 440 NW2d 639 (1989).

B

Next, defendant argues that 1968 PA 13 is inapplicable by its own terms. Section 4 of the act, MCL 554.64; MSA 26.49(14), provides:

---

[3] In discussing defendant's interest, the trial court used the term "right of reverter" which defendant argues is different from a "possibility of reverter." However, we note that on past occasions our Supreme Court has used the terms "right of reverter" and "possibility of reverter" interchangeably. See *Avery v Consumers Power Co,* 265 Mich 696, 698; 253 NW 189 (1934); *Weber v Ford Motor Co,* 245 Mich 213, 217; 222 NW 198 (1928). Regardless of the terms used, however, defendant did not possess a true reversion, because the event by which plaintiff's interest was limited was not certain to happen.

This act does not apply:

(a) To a lease for a term of years.

(b) If the specified contingency must occur, if at all, within the period of the rule against perpetuities.

(c) *If the terminable interest is held for public,* educational, religious or charitable *purposes.*

(d) If the terminable interest is created in a conveyance from the United States of America, the state or any agency or political subdivision of either of them. [Emphasis added.]

Defendant relies on subsection (c) and argues that the terminable interest was held for a public purpose because a railroad is a common carrier that serves the public. We disagree.

Plaintiff is a private corporation that privately acquired its interest in the five strips of land from defendant, also a private organization, for railroad purposes. While there have not been any published decisions addressing the applicability of 1968 PA 13 to railroad rights of way, the issue has been the subject of an opinion by our Attorney General. In OAG, 1975-1976, No. 4949, p 350 (March 24, 1976), the Attorney General was asked to give an opinion "concerning the application of 1968 PA 13 . . . to land in which a railroad corporation has, for railroad purposes, acquired from a private party [a] terminable interest [consisting of either] a fee subject to right of re-entry for condition broken [or] a fee subject to possibility of reverter." The Attorney General opined:

[T]erminable interests acquired by a railroad corporation are not excluded from operation of the act by 1968 PA 13, § 4, *supra.* In other words, title to the railroad "right of way" held in fee subject to a right of re-entry for condition broken or a possibility of reverter may ripen into title in fee abso-

lute, no longer subject to termination, if the contingency specified does not occur within thirty (30) years after the creation of the terminable interest. [*Id.*, p 351.]

The Attorney General reasoned that most railroad lines in this state were constructed decades ago and that, absent 1968 PA 13, impairment of the marketability or alienability of title to rights of way upon abandonment would result, precisely what the act seeks to avoid. *Id.*

While an opinion of the Attorney General is not precedentially binding, *Chapman v Peoples Community Hospital Authority of Michigan,* 139 Mich App 696, 702; 362 NW2d 755 (1984), we find it persuasive in this case. In addition, the fact that the railroad was actually established and utilized, not for purposes of serving the general public, but first to serve defendant's individual members, and then to further private mining interests, further convinces us that the terminable interests in this case were not held for public purposes.

C

Defendant's first constitutional challenge of 1968 PA 13 is that the abolition of its reversionary interests constitutes an impermissible impairment of a contract right, contrary to our state and federal constitutions.

The Michigan Constitution provides that "[n]o . . . law impairing the obligation of contract shall be enacted,"[4] while the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."[5]

Legislation challenged on a constitutional basis

[4] Const 1963, art 1, § 10.

[5] US Const, art I, § 10.

is clothed in a "presumption of constitutionality," *Shavers v Attorney General,* 402 Mich 554, 613; 267 NW2d 72 (1978), and every reasonable presumption must be indulged in favor of the statute's constitutionality. *Rohan v Detroit Racing Ass'n,* 314 Mich 326, 342; 22 NW2d 433 (1946).

Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and serve a legitimate public purpose. *United States Trust Co of New York v New Jersey,* 431 US 1, 22-23; 97 S Ct 1505; 52 L Ed 2d 92 (1977). When adjudicating impairment claims, the first inquiry should be whether the act has, in fact, operated as a substantial impairment of the contract relationship; the severity of the impairment determines the height of the hurdle the act must clear. *Allied Structural Steel Co v Spannaus,* 438 US 234, 244-245; 98 S Ct 2716; 57 L Ed 2d 727 (1978); *Van Slooten v Larsen,* 410 Mich 21, 39; 299 NW2d 704 (1980), app dis 455 US 901 (1982). While minimal alteration of contractual obligations may end the inquiry at its first stage, severe impairment will push the inquiry to a careful examination of the nature and purpose of the state legislation. *Allied Structural Steel Co,* p 445.

The public purpose served by 1968 PA 13 is the reduction of impairments of the marketability of title caused by possibilities of reverter and rights of entry of ancient origin and duration.

In *Van Slooten,* our Supreme Court held that MCL 554.291 *et seq.*; MSA 26.1163(1) *et seq.*, commonly known as the dormant minerals act, did not unconstitutionally impair the obligation of contract where it provided for the extinguishment of severed oil and gas interests of an owner of the interest who failed to perform a specified act or record a notice of claim of interest for a period of twenty years. The act provided for a three-year

grace period in which owners of those interests created before the act was passed could record a claim preserving their interest. The Court in *Van Slooten,* pp 40-41, stated:

> [T]he impairment or additional obligation imposed by the act cannot seriously be contended to have comprised a "high" hurdle. Neither can it be seriously contended that the defendants were substantially induced to enter the initial contractual relationships in reliance on the fact that their interests need not be recorded, or recorded more than once, or that such a requirement significantly changed their bargaining position.
>
> * * *
>
> Recording statutes long have been upheld in the face of constitutional challenges on impairment grounds, see *Jackson v Lamphire,* 28 US 280; 7 L Ed 679 (1830). The requirement of periodic recording furthers valid state interests.

The rationale of *Van Slooten* applies equally to this case. 1968 PA 13 does not provide for the automatic extinguishment of possibilities of reverter and rights of entry, but merely requires periodic recording in order for these interests to be preserved in excess of thirty years. As in *Van Slooten,* such recording cannot be considered to be a "high" hurdle, yet it furthers the state's interests in reducing impairments of the marketability of title. We believe that by requiring periodic recording, once every thirty years, and by providing for a one-year grace period in order to preserve those interests created more than thirty years before the effective date of the act, the state's methods are reasonable.

Defendant points to *Biltmore Village, Inc v Royal Biltmore Village, Inc,* 71 So 2d 727 (Fla, 1954), which held unconstitutional a Florida stat-

ute canceling reverter provisions in deeds which had been in effect for more than twenty-one years. The decision in that case was premised upon the fact that the saving clause, which gave a holder one year to enforce his right, afforded no remedy to those whose right had not yet accrued, because the condition upon which the right was limited had not yet occurred. However, the saving provision in 1968 PA 13 is different, because it specifically affords a remedy to those whose right of termination had not yet accrued by allowing them to record a written notice preserving such right. Therefore, *Biltmore* is distinguishable. On the other hand, several states have upheld statutes similar to 1968 PA 13 in the face of similar constitutional challenges. *Cline v Johnson Co Bd of Ed,* 548 SW2d 507 (Ky, 1977); *Presbytery of Southeast Iowa v Harris,* 226 NW2d 232 (Iowa, 1975), cert den 423 US 830 (1975); *Brookline v Carey,* 355 Mass 424; 245 NE2d 446 (1969); *Trustees of Schools of Twp No 1 v Batdorf,* 6 Ill 2d 486; 130 NE2d 111 (1955). Contra *Bd of Ed of Central School Dist No 1 v Miles,* 15 NY2d 364; 207 NE2d 181; 259 NYS2d 129 (1965).

Accordingly, we hold that 1968 PA 13 does not unconstitutionally impair the obligation of contract.

### D

Defendant further argues that 1968 PA 13 is unconstitutional because it constitutes a deprivation of property without due process of law.[6]

First, defendant argues that the act is unreasonable and does not constitute a proper exercise of the state's police power. To overcome the presumption of constitutionality, defendant must establish

---

[6] US Const, Am XIV; Const 1963, art 1, § 17.

either that no public purpose is served by the act or that no reasonable relationship exists between the remedy adopted and the public purpose sought to be achieved. *Van Slooten,* pp 42-43; *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd,* 397 Mich 337, 343-344; 245 NW2d 1 (1976).

Contrary to its earlier arguments, defendant argues that no public purpose is served because plaintiff does not serve the public personally and because the land in the hands of plaintiff would not benefit the public. However, because, as indicated previously, the purpose served by the act is the avoidance of impairment of the marketability of title caused by ancient reversionary interests, a finding of public purpose is neither dependent upon nor related to the actual use of the land. Thus, defendant has not shown that a public purpose is not involved.

Furthermore, defendant does not challenge the reasonableness of the act in terms of the purpose sought to be achieved. Rather, defendant argues that the reasonableness of the act must be determined from its application to the facts of each individual case. However, defendant's support for this argument is misplaced because it rests solely upon cases construing the reasonableness of zoning ordinances. Defendant further argues that *Oberlin v Wolverine Gas & Oil Co,* 181 Mich App 506; 450 NW2d 68 (1989), supports its position that a law is unconstitutional where its application would be arbitrary and unreasonable in a specific instance. We disagree. In *Oberlin,* this Court refused to construe the dormant minerals act as requiring abandonment of mineral rights where, within the grace period provided by the statute, an owner

records a mineral deed, as opposed to a "claim of interest." The constitutionality of the act was not at issue.

As we have held previously, 1968 PA 13 is a reasonable method of dealing with the problem caused by the continued and unlimited existence of "fleeting and amorphous" interests. See *Cline.* Also see *Van Slooten,* p 48. While there may exist other methods of achieving the same objective, the existence of other possible means does not render the act unconstitutional. *Id.,* pp 49-50.

Finally, we summarily reject defendant's argument that 1968 PA 13 is unconstitutional because it does not provide for legally adequate notice; the act itself provides sufficient notice of its recording requirements. *Van Slooten,* p 52, n 28; *Grand Rapids Ind Pub Co v Grand Rapids,* 335 Mich 620, 630; 56 NW2d 403 (1953).

E

In summary, with respect to defendant's issues on cross appeal, we affirm the trial court's judgment declaring plaintiff the owner, in fee simple absolute, of the four southern strips of land (represented by conveyances one through four), for the reason that, under 1968 PA 13, defendant's failure to record a written notice of its desire to preserve its possibilities of reverter in those parcels rendered such interests unenforceable; we further conclude that 1968 PA 13 does not violate the constitutional protections against impairment of contract, nor does the act unconstitutionally deprive defendant of property without due process of law.

Affirmed in part and reversed in part.