*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAROLD G. KELLOGG and CAROLYN S. KELLOGG, Trustees of the HAROLD G. KELLOGG AND CAROLYN S. KELLOGG LIVING TRUST,

Plaintiffs-Appellants,

v

TROY E. HAYNES, Trustee of the TROY E. HAYNES TRUST, WENDOLYN JO HAYNES, Trustee of the WENDOLYN JO HAYNES TRUST, KIM A. DUFLO, Trustee of the KIM A. DUFLO REVOCABLE LIVING TRUST, KIMBERLY S. PORATH, LISA A. GIEGLER, EDWARD J. HAYNES, Trustee of the EDWARD J. HAYNES TRUST, ANITA HAYNES, Trustee of the ANITA HAYNES TRUST, EDITH T. RUDD, Trustee of the EDITH T. RUDD LIVING TRUST, THOMAS D. RYAN, Trustee of the THOMAS D. RYAN TRUST, KAY L. RYAN, Trustee of the KAY L. RYAN TRUST, SHARON J. DONOVAN, Trustee of the SHARON DONOVAN TRUST NUMBER 1, THOMAS C. BOHEN and ARLENE M. BOHEN, Trustees of the THOMAS C. BOHEN AND ARLENE M. BOHEN REVOCABLE LIVING TRUST, WW FARMLAND, LLC, WW LEGACY FARMLAND, LLC, TODD HAYNES, JORDAN HAYNES, ALICIA HAYNES, DIANNE M. DUFLO, Trustee of the DIANNE M. DUFLO REVOCABLE LIVING TRUST, BARBARA J. DUFLO, Trustee of the BARBARA J. DUFLO REVOCABLE LIVING TRUST, GARY GALLAGHER, and GEOFFREY GALLAGHER,

Defendants-Appellees,

UNPUBLISHED
August 15, 2024

No. 363516
Gratiot Circuit Court
LC No. 2021-000472-CH

-1-

and

CARMEN HAYNES, KIM C. DUFLO, and
KELVIN L. DUFLO,

        Defendants.

---

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendants and granting in part defendants' motion for sanctions. Because there was a genuine issue of material fact regarding whether a railroad easement—the subject of the litigation—was extinguished, we reverse the trial court order granting defendants' motion for summary disposition. We affirm, however, the trial court's order granting in part defendants' motion for sanctions. Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In 1886, the Toledo, Saginaw, and Muskegon Railway Company ("TS&M") planned to construct a railway between Muskegon and Ashley, Michigan. In 1888, the predecessors in interests of defendants' properties[1] each conveyed an interest in a 50-foot strip of land to TS&M by way of deeds. In relevant part, those deeds conveyed "a strip of land for a right of way" and referred to the conveyance as "easements and privileges" for railroad purposes. TS&M eventually became part of and was acquired by the Grand Trunk Western Railway Company ("GTW"). GTW used the railway until approximately 1983, when it commenced formal abandonment proceedings with the Interstate Commerce Commission ("ICC"), which was authorized by the ICC the following year. The abandonment proceedings were suspended while GTW negotiated the sale of the line to another railway, the Tuscola & Saginaw Bay Railway Company ("TSBR"). Ultimately, TSBR purchased the portion of the line east of the property at issue, running from Middleton to Ashley, where it connected to another railway line. The tracks west of the property at issue, which ran from Carson City to Muskegon, were physically removed.

In 1985, plaintiff Harold G. Kellogg purchased GTW's interest in the railroad line between Carson City and Middleton. Harold's brother, Dennis, who needed the line to operate his grain elevator in Carson City, used the line two or three times a week until 2001, when he stopped doing so for health reasons and removed the elevator. The railroad property at issue was divided into tax parcels, and Dennis or Harold paid the property taxes. After 2001, Dennis continued to perform maintenance on the tracks, including removing dead trees that threatened them. Dennis gave various individuals permission to hunt, trap, and tap trees for syrup, at least partially in

---

[1] Although some of the defendants are not property owners and are alleged to be agents of property owners, we will refer to "defendants" as the property owners for convenience.

exchange for performing "cleanup work" and notifying him about issues on the property. Four to six times a year, railroad enthusiasts operated hobby cars or maintenance equipment on the line. As had been the case while Dennis was still shipping grain, the track gutters at some road crossings needed to be cleaned to do so.

Defendants allegedly began encroaching on or damaging the railroad property several years before plaintiffs commenced suit in 2021. Plaintiffs sought to quiet title in the railroad property or establish that they held an easement. They advanced various theories, including adverse possession or acquiescence, trespass, and unjust enrichment. During the litigation, the parties stipulated twice to an extension of discovery deadlines. Plaintiffs only partially met those deadlines and repeatedly failed to communicate with defendants. Dennis was deposed after the stipulated deadline for doing so had expired, and an attempt to depose Harold failed because of technical problems, following which plaintiffs never attempted to reschedule it. After the deadline discovery ended, plaintiffs moved to extend discovery, which defendants opposed. Almost contemporaneously, defendants moved for summary disposition.

The trial court refused to extend discovery, finding that plaintiffs had ample opportunity for discovery, plaintiffs did not show good cause, and the extension would be prejudicial to defendants. The trial court also refused to consider plaintiffs' untimely-filed witness and exhibit lists or several affidavits that plaintiffs provided after the end of discovery. The trial court refused to sanction plaintiffs any further, and it ultimately granted summary disposition on the basis of its finding that the railroad easement was extinguished either in 1984 or in 2001. The trial court did not expressly address plaintiffs' alternative theories of adverse possession, acquiescence, or unjust enrichment.

This appeal followed.

## II. DISCOVERY SANCTIONS

### A. STANDARDS OF REVIEW

This Court reviews "for an abuse of discretion a trial court's decision regarding a motion to extend discovery." *Decker v Trux R Us, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014). This Court also reviews for an abuse of discretion a trial court's refusal to entertain a motion filed beyond a deadline in a scheduling order. *Kemerko Clawson LLC v RXIV Inc*, 269 Mich App 347, 349-351; 711 NW2d 801 (2005). Finally, this Court reviews for an abuse of discretion the trial court's imposition of sanctions for violating a discovery order. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 8. A trial court abuses its discretion by choosing an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. ANALYSIS

Plaintiffs argue that the trial court abused its discretion by refusing to grant its motion to extend discovery and by sanctioning them for discovery violations, which they assert amounted to a dismissal. We disagree.

Under MCR 2.301(B)(1), the trial court is permitted to set "the time for completion of discovery . . . by an order entered under MCR 2.401(B)." MCR 2.401(B)(2)(a)(v) states that the court may enter a scheduling order to establish a schedule for discovery to be completed. In determining whether to extend discovery, "[t]he trial court should consider whether the granting of discovery will facilitate or hamper the litigation." *Nuriel v Young Women's Christian Ass'n of Metro Detroit*, 186 Mich App 141, 146; 463 NW2d 206 (1990). "Factors such as the timeliness of the request, the duration of the litigation and the possible prejudice to the parties should also be considered." *Id*.

At the outset, we agree with plaintiffs that the parties' earlier joint objection to the trial court's first scheduling order and stipulation to an extended discovery deadline should not be held against them. However, their subsequent request to extend discovery was made *after* the close of that stipulated deadline. Plaintiffs contend that the extension of discovery deadline would not have impacted the rest of the litigation, but it is plain that the extension of the deadline would impact other relevant trial dates. Under the court's stipulated order, defendants were required to file their dispositive motion within days after discovery closed. If plaintiffs were to extend discovery again, the dispositive motion deadline, at a minimum, would have needed to be extended and, as a practical matter, all dates would likely need to be changed.

Plaintiffs further argue that they had good cause for their delays because of Harold's health problems, lack of technical savviness, and physical distance from counsel. Viewing plaintiffs' characterizations in their best light, the issues raised are only relevant to whether plaintiffs could have timely produced Harold for his deposition or, perhaps, timely file his affidavit. But these issues do not explain why plaintiffs also failed to timely (1) request the discovery extension, (2) file their witness and exhibit lists, or (3) file affidavits from other proposed witnesses. It is unclear to this Court how Harold's health and distance contributed to those other failures. Finally, while Harold's deposition may have not taken place for reasons outside plaintiffs' control, plaintiffs were under a stipulated court order to provide him "no later than May 16, 2022."

Therefore, plaintiffs had a reasonable amount of time for discovery, but they appear not to have diligently used it. Extending discovery again would have prejudiced defendants by needlessly protracting the litigation. It was, therefore, not an abuse of the trial court's discretion to deny plaintiff's motion to extend discovery.

The trial court also did not abuse its discretion when it refused to consider plaintiffs' witness list, exhibit list, and affidavits that were filed after the filing deadline.[2] Under the trial court's amended scheduling order, "[f]ailure to comply with [the order] will bar the introduction of evidence or testimony at trial unless good cause is shown by stipulation of the parties or by

---

[2] Defendants contend that plaintiffs have waived this issue on appeal. We disagree. Unpreserved issues in civil cases are waived and need not be reviewed on appeal. *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 2-5. However, to preserve an issue, "a party need only bring the issue to the court's attention—whether orally or in a brief or both." *Glasker-Davis*, 333 Mich App at 228. In the trial court, plaintiffs made an oral motion for the trial court to accept their untimely witness list, exhibit list, and affidavits, which was ultimately denied. The issue is, therefore, preserved. See *id*.

pretrial motion . . . ." We disagree, therefore, with plaintiffs' characterization of the trial court's order as a discovery sanction tantamount to dismissal. The trial court did not order that any witnesses would be stricken or that it would refuse to consider evidence already in the record. Rather, the trial court only imposed the consequences specified in the parties' stipulated amended scheduling order, i.e., disallowance of untimely-filed evidence. For these reasons, the trial court did not abuse its discretion when it denied plaintiffs' motion to extend discovery and granted in part defendants' motion for sanctions.

## III. RAILROAD EASEMENT

### A. STANDARDS OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). "A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (quotation marks, alteration, and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

### B. ANALYSIS

Plaintiffs also contend that the trial court erred when it found that there were no genuine issues of material fact regarding whether the express railroad easement was extinguished because the evidence does not show that GTW or plaintiffs manifested the requisite intent to abandon it. We agree.

"An easement is a right to use the land of another for a specific purpose." *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). A deed to a railroad company for railroad purposes conveys only an easement if the deed specifies that it is for a right-of-way or for an easement. *Carmody-Lahti Real Estate, Inc*, 472 Mich at 370-378; *Quinn*, 256 Mich at 150-151. The use of an easement is strictly confined to the purposes specified in the grant, but the holder of the easement may make improvements to the extent they are necessary to the reasonable and proper use of the easement. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 41-42; 700 NW2d 364 (2005).

Merely pursuing ICC abandonment proceedings is evidence of intent to abandon, but it is not dispositive. *Carmody-Lahti Real Estate*, 482 Mich at 384-385. In the context of the ICC proceedings, "abandonment" means only that "the line is no longer part of the national transportation system, and although the Commission is empowered to impose conditions on abandonments . . . , as a general proposition ICC jurisdiction terminates." *Preseault v ICC*, 494 US 1, 5 n 3; 110 S Ct 914; 108 L Ed 1 (1990) (internal citation omitted). Abandonment relieves

the operator "of its federal obligation to supply rail service." *Hayfield Northern R Co, Inc*, 467 US at 626. In *Carmody-Lahti Real Estate*, 482 Mich at 386, the Michigan Supreme Court concluded that the railroad had manifested an intent to abandon a railway easement by pursuing abandonment proceedings *and* by removing the physical rails. Mere nonuse of an express easement, however, "is insufficient to show abandonment" unless "accompanied by some act showing a clear intent to abandon." *Ludington & Northern R v Epworth Assembly*, 188 Mich App 25, 33; 468 NW2d 884 (1991). In the context of railway regulation, a line may be "discontinued" rather than "abandoned" if it is no longer in use but could be reactivated later. *R Ventures, Inc v Surface Transp Bd*, 299 F3d 523, 531 n 4 (CA6 2002).[3]

Viewed in a light most favorable to plaintiffs, the evidence submitted to the trial court did not conclusively show that GTW abandoned the easement. Although the rails to the west of the property were removed, plaintiffs did not need those rails, and the remaining portion still connected to the national rail system. In the ICC proceedings, GTW stated that the "line could possibly be operated profitably by an organization unencumbered by the standard railroad . . . operating agreements." In other words, the purposes of the easement remained viable, and GTW attempted to negotiate the sale of the entire line and it vigorously disputed its value, which is not consistent with the "fire sale" defendants describe. After TSBR purchased only part of the line, GTW sold its remaining interest to Harold for a significant sum of money in a deed that stated that Harold was "doing business as SWEET LINE RAILROAD." Therefore, GTW must have intended and expected that the line would continue to be used for railroad purposes and still had meaningful value. The evidence only shows that GTW wished to be relieved of its federal obligation to provide national rail service, not that GTW intended to abandon the railway easement itself or prevent the relevant portion of the railroad from being used. See *Carmody-Lahti Real Estate*, 482 Mich at 384-385.

Defendants also discount the use to which plaintiffs put the railroad for the next 15 years. Dennis testified that he used the rails "seasonally" but also "two or three times a week" throughout the entire year. There was no evidence of an intent to abandon the railroad easement at least until 2001, when Dennis stopped using it to ship grain and removed his grain elevator. There was no evidence that any locomotives were used on the property after 2001, nor were there any rail cars full of goods sent up and down the line. Although not dispositive in this context, as noted above, in the context of railway regulation, a line may be "discontinued" rather than "abandoned" if it is no longer in use but could be reactivated later. *R Ventures*, 299 F3d at 531 n 4.

Although the conclusion of the ICC proceedings means this case is now outside the context of railway regulation, that distinction is strongly reflected in how plaintiffs continued to use the property. Dennis testified that railroad enthusiasts ran maintenance equipment up and down the track, he removed dead trees because they could damage the track or interfere with its use, and the line was still operable. Defendants make much of the fact that the rail gutters at road crossings needed to be cleaned, but Dennis testified that doing so was necessary even while he was using the track two or three times a week. The fact that plaintiffs made much less use of the property is

---

[3] Although lower federal court decisions are not binding, we may rely on them for their persuasive value. *Abdela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

a mere nonuse argument, which does not necessarily constitute abandonment. See *Epworth Assembly*, 188 Mich App at 33.

Extinguishment of an express railroad easement requires a combination of nonuse and an intent to abandon. *Id*. At the most, the evidence shows nonuse after 2001. Viewed in a light most favorable to plaintiffs, there is a genuine issue of material fact whether GTW or plaintiffs manifested an intent to abandon the easement. The trial court therefore erred by granting summary disposition in favor of defendants as to this theory of recovery. On remand, the trial court shall address plaintiffs' other theories of recovery in the first instance.[4]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs may be taxed. MCR 7.219(A).

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young

---

[4] The doctrine of acquiescence is not relevant in this case. Acquiescence applies where two property owners treated a particular line as the true boundary between their properties for a sufficient length of time. *Walters v Snyder*, 239 Mich App 453, 457-458; 608 NW2d 97 (2000). That line need not be precise, and the burden of proof is a mere preponderance of the evidence. *Id*. at 458. "Unlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission." *Houston v Mint Group, LLC*, 335 Mich App 545, 568; 968 NW2d 9 (2021). However, the doctrine does require some kind of agreement between the parties, whether express or tacit, as to the true location of a boundary line between their properties. *Id*. at 567-568, 570. Here, there has never been any question of where the boundary line is. If plaintiffs have any rights, nothing in the record suggests any doubt that those rights extend to the boundary described in the deeds. Rather, the question is whether plaintiffs held any rights at all, which is not a matter of acquiescence.